IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| FREDDIE GARLAND, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | Hon. |
| v. | **Class Action** |
| ORLANS PC (f/k/a ORLANS ASSOCIATES PC and ORLANS MORAN PLLC)), LINDA ORLANS, ALISON ORLANS, JANE DOE, and JOHN DOE, | **Demand For Jury Trial** |
| Defendants. | |

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Samuel G. Firebaugh (P34276)
FIREBAUGH & ANDREWS PLLC
38545 Ford Rd, Ste 104
Westland, MI  48185
Phone: (734) 722-2999
samuelgfirebaugh@hotmail.com

*Counsel for Plaintiff and the Proposed Class*
_____/

## CLASS ACTION COMPLAINT

### Introduction

1.      Effective March 1978 the United States Congress enacted the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692, *et seq.* In so doing Congress stated its "findings and declaration of purpose" as follows:

> It is the purpose of this subchapter to eliminate abuse debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, *and to promote consistent State action to protect consumers against debt collection abuses.*

15 U.S.C. § 1692(e) (emphasis added).

2.      Following Congress' express invitation, in 1980 and in 1981 the Michigan Legislature enacted the Michigan Occupational Code ("MOC"), M.C.L. § 339.901, *et seq.*, and the Regulation of Collection Practices Act ("RCPA"), M.C.L. § 445.251, *et seq.,* regulating the debt collection practices of collection agencies and "regulate d persons" respectively (collectively, "Michigan collection practices statutes"). Like the FDCPA, 15 U.S.C. §1692e, these Michigan collection practices statutes prohibit "misleading" communications in connection with the collection of debts. M.C.L. §§ 339.915(e), 445.252(e). More specifically, the FDCPA and the Michigan collection practices statutes each expressly prohibit communications purporting to be from an attorney that are not actually communications from an attorney. 15 U.S.C. § 1692(e)(3); M.C.L. §§ 339.915(a), 445.252(a).

3.      Seventeen years after enactment of the RCPA, in 1998, Linda Orlans founded in Troy, Michigan, the firm that was to be known for many years as Orlans Associates PC, one of the largest foreclosure firms in Michigan.

4.      In approximately 2007, Linda Orlans formed Orlans Moran PLLC as a Michigan professional limited liability corporation, with operations based in greater Boston, to provide substantially similar mortgage default (foreclosure) services in Massachusetts and surrounding states.  In early 2017, Linda Orlans and her daughter, Alison formed Orlans PC in a transaction whereby Orlans Moran PLLC was merged into Orlans Associates PC, whose name was changed to Orlans PC.

5.      Orlans PC operates from offices in Troy, Michigan, Waltham, Massachusetts, Rockville, Maryland, Leesburg, Virginia, and Williamsburg and Georgetown, Delaware. It provides foreclosure services for properties located in some 14 jurisdictions, including, Michigan, Massachusetts, Maryland, and Virginia.

6.      This action concerns a particular misleading communication:  a form letter sent by defendant Orlans PC (f/k/a Orlans Associates PC), to tens of thousands of homeowners in Michigan and other states over the past several years.

7.      Under both the FDCPA and the Michigan collection practices statutes courts apply an objective "least sophisticated consumer" standard to determine whether communications are misleading.

8.      This case falls within a category of debt collection cases referred to as "attorney letterhead" cases. The form letters from Orlans PC that are the subject of this Complaint are misleading in violation of both federal and state law because they suggest to consumers that they were from an attorney, when in fact they were not. Instead, these letters were generated and sent by non-attorney personnel with minimal or no substantive attorney review or involvement.

**Jurisdiction and Venue**

9.      This Court has jurisdiction of the FDCPA claim under 28 U.S.C. § 1331, and under 28 U.S.C. § 1692k(d).  This Court has jurisdiction of the Michigan collection practices statutory claims under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and 1711–1715, in that (i) the putative class contains more than 100 members; (ii) the claims total more than $5 million; and (iii) there is minimal diversity because a number of the more than 25,000 estimated class members who were Michigan residents when Orlans PC sent them the Orlans PC Foreclosure Letter (defined below) up to six or more years ago have since moved their domiciles outside of Michigan.

3

10.     This Court also has supplemental jurisdiction over the Michigan collection practices claims under 28 U.S.C. § 1367.

11.     Venue is proper in this district because all defendants reside here, all defendants conduct business here, plaintiff resides here, and the conduct complained of occurred here.

### Parties and Affiliates

12.     Plaintiff Freddie Garland ("Garland") is an individual residing in Detroit, Michigan.

13.     Orlans PC is organized as a professional corporation under Michigan law, with its principle place of business in Troy, Michigan.  On March 6, 2017, the firm changed its name from "Orlans Associates, P.C.," to "Orlans PC."  On March 10, 2017, Orlans PC filed an assumed name certificate for "Orlans Associates PC."

14.     As used hereinafter in this Complaint the term "Orlans PC" refers both to Orlans PC, and to Orlans Associates, P.C. and Orlans Associates PC, each of which are in fact and in law the same entity, and includes the operations of the former Orlans Moran PLLC firm after its merger with Orlans PC. The term "Orlans Moran" refers to Orlans Moran PLLC before its merger into Orlans PC.

15.     Orlans PC holds itself out as a law firm.

16.     Orlans Moran held itself out as a law firm.

17.     Linda Orlans is an attorney licensed to practice law in Michigan, and, on information and belief, a resident of Birmingham, Oakland County, Michigan.

18.     On information and belief, Linda Orlans, during the Class Period (defined below), individually or in combination with her daughter, Alison Orlans, has been the majority shareholder/owner of Orlans PC and an executive of the firm.

19.     Linda Orlans is Executive Chair, Treasurer, and Director of Orlans PC.

20.     Alison Orlans is President, Chief Executive Officer, and Secretary of Orlans PC. On information and belief, Alison Orlans is a resident of Birmingham, Oakland County, Michigan.

21.     On information and belief, Alison Orlans is a law school graduate but not licensed to practice law in Michigan.

22.     "Jane Doe" and "John Doe" are placeholders for an indeterminate number of partners or shareholders of Orlans PC or Orlans Moran that may bear individual culpability for the claims stated in this Complaint and who may be separately liable therefore.

<b>Orlans PC's Prominence in the<br>Foreclosure Industry And The Nature Of Its Business</b>

23.     On information and belief, Orlans PC is, and has for many years has been, the second largest foreclosure firm in Michigan based on number of foreclosures processed.

24.     Orlans PC's  clients are, and Orlans Moran's clients were, mostly banks, other investors and lenders, and mortgage servicers who require "default services," i.e., the foreclosure of mortgages on real property in the event of an alleged default.

25.     Orlans PC is engaged in the business of foreclosing on homes, and a large portion of its business derives from its foreclosure practice.

26.     At all relevant times Orlans PC, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

27.     According to its website, www.orlanspc.com, the firm "is the preferred legal services provider of over 200 real estate and financial services companies." On information and belief, Orlans PC operates in some 14 states.

28.     Orlans PC prides itself on its "lean" operations. According to its website, it "is an overwhelmingly different approach to legal services: refined processes and a powerful investment

in IT produces precision, quality, and results." In a recent interview, Linda Orlans touted her firm for "creating a more capable, more responsive and more efficient entity to serve a growing client base." According to the firm's website, "[s]implicity isn't just a word for us. It is a mantra that is intertwined deep within our culture as we strive to simplify both our clients' lives and each other's."

29.     The firm says that its "pioneering legal simplicity and striving to make the law more accessible and affordable" for national banks, credit unions, consumer loan finance companies, loan servicers, investors, and other clients.

30.     In its job descriptions for posted attorney openings the firm describes its practice as "high volume" and "fast paced."

31.     As of May 16, 2018, Orlans PC employed 12 attorneys licensed to practice law in Michigan, including Linda Orlans.

32.     Unlike most law firms, Orlans PC's website does not list its attorneys.

33.     According to its listing on monster.com, a popular online job search and application service, Orlans PC has between 500 and 999 employees across its operations.

34.     Assuming Orlans PC has 30 licensed attorneys (including the 12 licensed in Michigan, its headquarters), and only 500 employees (the very bottom of the range in its monster.com listing), the attorney-to-staff ratio would be less than one in 16. If Orlans PC has 500 employees, of which 30 are attorneys, then some 6% of its employees are attorneys.

35.     On information and belief, other law firms in Michigan have substantially fewer staff in relation to attorneys than Orlans PC.

36.     In 2012, The Managing Partner Forum, working with ALM Legal Intelligence and The National Law Journal, conducted a comprehensive survey of mid-size US law firms. (ALM Survey.) Some 196 firms, with nearly 10,000 lawyers, participated.

37.     The ALM Survey found that in 2012 law firms averaged 83 support staff per 100 lawyers (ratio of 0.83 staff to one lawyer). If Orlans PC has a total of 30 lawyers, and had an average ratio of support staff to lawyers, it would have approximately 25 support staff for a total of 55 employees (rather than 500 or more).

38.     Alternatively, if Orlans PC has 500 employees and had an average ratio of support staff to attorneys among mid-sized American law firms, it would employ approximately 273 attorneys rather than less than 50.

39.     On information and belief, the vast majority of non-commercial residential property foreclosures conducted by Orlans PC in Michigan and in other states have been pursuant to non-judicial foreclosure statutes.

40.     In Michigan, the vast majority of Orlans PC's foreclosures have been pursuant to Michigan's foreclosure by advertisement statute, M.C.L. § 600.3201, *et seq.*

41.     On information and belief, in each foreclosure by advertisement proceeding in Michigan handled by Orlans PC since at least 2011, Orlans PC has sent a letter to the debtor/mortgagor in substantial conformity with Exhibits A and to this Complaint, in that each such letter:

   a.   Was on firm letterhead;

   b.   Displayed Linda Orlans' and Alison Orlans' surname;

   c.   Identified Orlans PC's client as the creditor or servicing agent;

   d.   Indicated that Orlans PC was a law firm retained to foreclose the debtor's mortgage;

   e.   Did not disclaim that it was from an attorney;

   f.   Was (with rare exception) unsigned by an individual Orlans PC lawyer; and

g. Contained the typographic text "Orlans Associates, P.C." or "Orlans Associates PC" or "Orlans PC" at the end of the letter in the signature block.

### The Orlans PC Foreclosure Letter

42. On or about May 18, 2017, Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe caused to be sent to plaintiff by U.S. Mail a letter informing him that Orlans PC had been retained by Wells Fargo Home Mortgage Inc. to foreclose on his home that he occupied at 15307 Stout Street, Detroit, Michigan 48223. A true and correct copy of the first page of this letter is attached as Exhibit A hereto.[1] Plaintiff received and read this letter.

43. The mortgage debt referenced in the May 18, 2017, letter and the other Orlans PC Foreclosure Letters (defined below) sent to Class Members arose out of transactions in which the money, property, insurance, or services that are the subject of the transaction were primarily for personal, family, or household purposes.

44. Page 2 of the Orlans PC May 18, 2017, letter referenced in the preceding paragraph was titled "Notice of Debt," and contained the information reproduced on Exhibit B to this Complaint.[2] A copy of the complete May 18, 2017, letter from Orland PC to plaintiff is in defendants' possession, custody, or control.

45. The complete May 18, 2017, letter from Orlans PC to plaintiff described above is referred to as the "Garland Foreclosure Letter."

46. Plaintiff was confused by the Garland Foreclosure Letter in that it appeared to be from an attorney, but was not signed by one, and did not identify the full name of an attorney.

---

[1] The top line of text, in dark blue, on Exhibit A was not contained in the original letter, but was imprinted on the image by the Court's ECF system when filed by counsel for Wells Fargo Home Mortgage Inc. in a prior case in this Court.

[2] Exhibit B is not a photocopy of page 2 of the letter, but reproduces its contents as represented by Orlans PC through its counsel in a federal court filing in a prior case.

47.     Plaintiff was not certain whether or not the Garland Foreclosure Letter was from an attorney.

48.     The suggestion in the Garland Foreclosure Letter that it was from an attorney raised plaintiff's anxiety.

49.     The appearance that the Garland Foreclosure Letter may have been from an attorney suggested to plaintiff that an attorney may have conducted an independent investigation and substantive legal review of the circumstances of his account, such that his prospects for avoiding foreclosure were diminished.

50.     The Garland Foreclosure Letter was an attempt to collect a debt allegedly owed by plaintiff on a note secured by a mortgage on his home.

51.     The Garland Foreclosure Letter is a form letter, in that it was generated based on a standard form of letter used by Orlans PC to initiate correspondence with homeowners whose mortgages Orlans PC had been retained to foreclose. This form letter (as distinct from Exhibits A and B, which comprise an instance of it) is referred to herein as the "Orlans PC Foreclosure Letter".

52.     Using the Garland Foreclosure Letter as an example, on information and belief account-specific information such as the addressee, the "Regarding:" line, the Orlans PC file number, and information contained in the Notice of Debt on page 2 (including "the amount of the debt") was "merged" or "cut and pasted" into the Orlans PC Foreclosure Letter to generate such letters to Michigan residents and residents of other states.

53.     On information and belief, the Orlans PC Foreclosure Letter has remained substantively consistent throughout the Class Period, with minor changes that do not materially affect the claims presented in this Complaint.

54.     On information and belief, the Orlans PC Foreclosure Letter, since at least 2011:

9

a. Has been printed on Orlans PC letterhead;

b. Has displayed Linda Orlans' and Alison Orlans' surname;

c. Has recited that Orlans PC is "[a] law firm";

d. Has recited the name of Orlans PC's "client";

e. Has contained other boilerplate text specified by the client;

f. Has included a closing substantially similar to "Sincerely, Orlans PC,"

g. Has not disclaimed that it was from an attorney;

h. Has not been signed by an individual attorney at Orlans PC.

### The Misleading Character of the Orlans PC Foreclosure Letter

55.     On information and belief Exhibit A was not specifically authored by an attorney. In other words, an attorney did not write the Garland Foreclosure Letter.

56.     On information and belief, the Garland file was not meaningfully reviewed by an attorney at Orlans PC in connection with the Garland Foreclosure Letter being generated and sent by or on behalf of Orlans PC to plaintiff.

57.     On information and belief any review of Orlans PC Foreclosure Letters by an Orlans PC attorney before they are sent out is clerical, ministerial, or administrative in nature.

58.     On information and belief, Orlans PC Foreclosure Letters are almost never signed, and in the rare instances when they are signed this fact is discernable from Orlans PC's records and files.

59.     On information and belief, the Garland Foreclosure Letter, and other Orlans PC Foreclosure Letters, were processed by non-attorney "processors" using the firm's proprietary eVantage software and/or services supplied by non-attorneys at the Orlans PC affiliate, eVantage Services, Inc., based on data supplied by the client.

60.      Exhibit A was not from an attorney.

61.     15 U.S.C. § 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."

62.     MCL § 445.252(a) prohibits "[c]ommunicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney . . . unless the regulated person is an attorney . . . ."

63.     MCL § 445.252(e) prohibits "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt . . .  when it is made in connection with collecting a debt."

64.     By using Orlans PC letterhead, including Linda Orlans' and Alison Orlans' surname, and by containing the other elements recited above, the Garland Foreclosure Letter and the Orlans PC Foreclosure Letter falsely suggest to the least sophisticated consumer that they were each from an attorney.

65.     Alternatively, the least sophisticated consumer reading the Garland Foreclosure Letter or the Orlans PC Foreclosure Letter could reasonably conclude that it was from an attorney or, conversely, that it was not from an attorney. Exhibit A and the Orlans PC Foreclosure Letter are each misleading for this additional reason.

66.     The Orlans PC Foreclosure Letter is misleading to gullible or naïve consumers.

67.     The misleading character of the Orlans Foreclosure Letter is not based on a bizarre or idiosyncratic reading of the letter.

68.     The Orlans PC Foreclosure Letter sent to each putative class member was misleading to the least sophisticated consumer for each of the reasons articulated herein.

69.     Whether or not a communication in connection with the collection of a debt is from an attorney is material to consumers, as indicated by Congress' and the Michigan

Legislature's adoption of specific statutory text focusing on this issue, and establishing violations for misleading consumers on this issue in each statute, respectively.

### Willfulness

70.     On February 26, 2008, more than ten years prior to the filing of the original Complaint in this matter, the United States Court of Appeals for the Sixth Circuit issued a published opinion in *Amanda Kistner v. The Law Offices of Michael P. Margelefsky, LLC and Michael P. Margelefsky*, 518 F.3d 433 (6th Cir. 2008). In the *Kistner* decision, the court states: "This court has not previously had occasion to decide an "attorney letterhead" case under the FDCPA." *Id.* at 438.

71.     The Sixth Circuit in *Kistner* held that a form debt collection letter on law firm letterhead sent to "thousands" of debtors that was block signed "ACCOUNT REPRESENTATIVE" which did not disclaim that it was from an attorney suggested to the least sophisticated consumer that it was sent by an attorney, and therefor was potentially misleading where no attorney specifically reviewed or authored the letter.

72.     Alternatively, the *Kistner* court held that a debt collection letter sent to a consumer on law firm letterhead that was not individually signed by an attorney could reasonably be construed either to have been sent or, conversely, not to have been sent by an attorney and was therefore was potentially misleading to the least sophisticated consumer.

73.      The *Kistner* court further held that an individual named member of a limited liability company who engaged in the following conduct was a "debt collector":

   a.  Drafting of the form letter that was sent to plaintiffs and putative class members;

   b.  Being the sole member of the LLC;

   c.  Negotiating terms with the mailing service provider used in the debt-collection practice;

    d.   Overseeing "compliance with applicable collection laws"; and

    e.   Becoming involved when the "intervention of a lawyer becomes necessary."

The *Kistner* court determined that such an individual may be held individually liable as a matter of law under the FDCPA without piercing the corporate veil.

74.    *Kistner* reversed summary judgment entered on the FDCPA claim and on a related state statutory claim in favor of both the corporate and the individual defendants and remanded the case to the district court for trial.

75.    On information and belief, in 2011 and throughout the Class Period, Orlans PC and Linda Orlans has held out Orlans PC as one of the country's foremost foreclosure law firms, as "best in class."

76.    On information and belief, in 2011 and throughout the Class Period, Orlans PC and Linda Orlans have marketed their services by promoting Orlans PC as having special expertise in the area of mortgage default services, including foreclosures.

77.    As reflected in Exhibit A and in the other Orlans PC Foreclosure Letters, defendants included a disclosure required by the FDCPA of debt collectors:

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

78.    The inclusion of the aforesaid notice reflects defendants' recognition that Orlans PC's communications providing notice to the homeowner of the initiation of non-judicial foreclosures in Michigan and elsewhere are subject to the FDCPA as communications relating to attempts to collect debts by a debt collector.

79.    On information belief, Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe—at least since the United States Supreme Court decided in *Heintz v. Jenkins,* 514 U.S. 291 (1995), that the FDCPA applies to lawyers who regularly engage in debt collection—have

monitored published and unpublished FDCPA, MOC, RCPA and other consumer rights case law issued by the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, the United States District Courts for the Eastern and Western Districts of Michigan, and other courts on a periodic basis.

80. To the extent that defendants did not monitor Supreme Court and other debt collection practices case law, their failure to do so was more than merely careless in view of the focus of Orlans PC's practice and the volume of default services and related foreclosure proceedings the firm handles.

81. Notwithstanding the publication of the *Kistner* decision, defendants continued to cause the Orlans PC Foreclosure Letter, on Orlans PC letterhead, to be sent to homeowners on information and belief by non-attorney collection staff without meaningful attorney review.

82. Defendants' conduct is "willful" as that term is used in M.C.L. § 445.257(2) because by continuing to send the Orlans PC Foreclosure Letter essentially in its pre-*Kistner* form for years after publication of that decision they "'ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 57 (2007) (construing "willful" under Fair Credit Reporting Act).

### Responsibility of the Individual Defendants

83. On information and belief, Linda Orlans, individually or in combination with interests held by her family, owns a majority interest in Orlans PC.

84. On information and belief, Alison Orlans individually owns shares of Orlans PC, and in combination with her mother and other family interests, owns a majority interest in Orlans PC.

85.     On information and belief, for most of its history Linda Orlans has been the chief executive, president, and manager of Orlans PC.

86.     On information and belief, Linda Orlans was the principal or co-principal responsible for directing the operations of Orlans Moran.

87.     On information and belief, in their respective capacities as owners, executives, officers, and managers of Orlans PC and/or Orlans Moran, Linda Orlans and Alison Moran, within the FDCPA Class Period and RCPA Class Period, have each had direct or indirect supervisory control and involvement in the following:

a.  The operations of Orlans PC;

b.  Establishing compliance policies, procedures, and protocols for Orlans PC and/or Orlans Moran, including compliance with state and federal collection practices laws;

c.  Establishing the processes and work flow of Orlans PC's and/or Orlans Moran's foreclosure and other default services;

d.  Appointing, supervising, and receiving reports from other managers and attorneys in management positions at Orlans PC and/or Orlans Moran involved in the foreclosure services offered by the firms; and

e.  Review and direct or indirect approval of form letters used in Orlans PC's and/or Orlans Moran's foreclosure services area, including the Orlans PC Foreclosure Letter.

88.     On information and belief, Linda Orlans has been personally involved, directly or indirectly, in the systems and procedures whereby the Orlans PC Foreclosure Letter was created, reviewed, approved, and/or modified, and in the adoption or implementation of the procedures whereby these form letters were and are sent to plaintiff and to class members.

89.     On information and belief, Alison Orlans has been personally involved, directly or indirectly, in the systems and procedures whereby the Orlans PC Foreclosure Letter was created,

reviewed, approved, and/or modified, and in the adoption or implementation of the procedures whereby these form letters were and are sent to plaintiff and to class members

90.     On information and belief, Linda Orlans and Alison Orlans each have the authority to approve and modify the Orlans PC Foreclosure Letter.

91.     On information and belief Jane Doe and John Doe have been personally involved, directly or indirectly, in the systems and procedures whereby the Orlans PC Foreclosure Letter was created, reviewed, approved, and/or modified, and in the adoption or implementation of the procedures whereby these form letters were and are sent to plaintiff and to class members.

### Class Allegations

92.     Plaintiff seeks certification of the following Class under Federal Rule of Civil Procedure 23(b), as may be refined from time to time in a Motion for Class Certification, or any motion to amend or modify such certification based on further investigation or discovery:

> All persons to whom Orlans PC caused to be sent any version of the Orlans PC Foreclosure Letter in connection with mortgages conveyed for residential real property, which was not returned as undelivered by the U.S. Post Office.

This proposed class is referred to herein as the "Class."

93.     Pursuant to Rules 23(b)(2) & (3), plaintiff further seek certification of the following subclass:

> All individuals to whom Orlans PC caused to be sent any version of the Orlans PC Foreclosure Letter in connection with mortgages conveyed for residential real property, dated one year or less from the filing of the original Complaint in this action, which was not returned as undelivered by the U.S. Post Office, through the date that the Court issues an order certifying any class requiring notice in this matter, and through the date of entry of final judgment as to any class for which notice is not required under Federal Rule of Civil Procedure 23.

This class is referred to as the "FDCPA Subclass."

94.     Pursuant to Rules 23(b)(2) & (3), and Rule 23(c)(5), plaintiff further seek certification of the following subclass:

All persons to whom Orlans PC caused to be sent any version of the Orlans PC Foreclosure Letter in connection with mortgages conveyed for residential real property located in Michigan, dated on or after April 17, 2011, which was not returned as undelivered by the U.S. Post Office, through the date that the Court issues an order certifying any class requiring notice in this matter, and through the date of entry of final judgment as to any class for which notice is not required under Federal Rule of Civil Procedure 23. ¶

This class is referred to as the "RCPA Subclass."

95.     "Class Period" as used in this Complaint refers to the time frames set forth above for the FDCPA Subclass and for the RCPA Subclass, respectively.

96.     Excluded from each class are the Court and its staff; any current officer or employee of Orlans PC; and any person who has either (i) litigated a claim against a defendant based upon the Orlans PC Foreclosure Letter to final judgment, except to the extent that such claims were dismissed without prejudice, or (ii) signed a release encompassing the claims presented in this Complaint, to the extent released.

97.     Plaintiff reserves the right to extend the Class Period to reflect any tolling of applicable statutes of limitations based upon other previously pending class actions encompassing any claim stated herein.

98.     Based upon publicly-available data, including records of the number of foreclosure advertisements posted in Michigan by Orlans PC since April 17, 2011, the number of class members is so numerous that joinder is impracticable, in that the RCPA class comprises some 40,000 members.

99.     Plaintiff's claims are typical of all class members in that plaintiff and each putative class member was sent a substantially identical form of the Orlans PC Foreclosure Letter that was misleading and incomplete in at least the ways set forth in this Complaint.

100. Plaintiff's claims arise from the same events or practices or course of conduct that gives rise to the claims of other class members, and their claims are based on the same legal theories.

101. The claims of the Class and of the Subclasses present a predominance of common over individual issues, including in particular:

a. Whether Orlans PC and the individual defendants are "debt collectors" for purposes of the FDCPA;

b. Whether Orlans PC and the individual defendants are "regulated parties" for purposes of the RCPA;

c. Whether the Orlans PC Foreclosure Letter is misleading in any of the ways alleged in this Complaint;

d. Whether the Orlans PC Foreclosure Letter was from an attorney;

e. Whether the least sophisticated consumer might reasonably believe the Orlans PC Foreclosure Letter to have been from an attorney;

f. Whether the least sophisticated consumer might reasonably believe the Orlans PC Foreclosure Letter not to have been from an attorney;

g. Whether this Court should enter a declaratory judgment declaring that the Orlans PC Foreclosure Letter violates the FDCPA and the Michigan debt collection statutes as alleged;

h. Whether this Court should enjoin defendants violations of the debt collection statutes as alleged;

i. Whether the individual defendants are each individually liable for the violations of the federal and state debt collection statutory violations alleged;

j. What the net worth is of Orlans PC, Linda Orlans, Alison Orlans, and the other defendants for applying the FDCPA 1% of net worth statutory cap for absent class members;

k. Whether the plaintiffs should be awarded statutory damages, attorneys' fees, and costs of suit under the FDCPA; and

l. Whether each class member should be awarded statutory damages under the Michigan debt collection statutes in the amount of $50, plus a civil fine of $150 per class member together with attorneys' fees and costs of suit.

102.     These and other common issues are central to the claims of the class and permit them to be resolved "in one stroke" on a classwide basis.

103.     Plaintiff is an adequate representatives of the Class and each Subclass in that he has no conflict with other putative class members, understands his obligations as class representatives, and is represented by experienced class counsel with the expertise vigorously and competently to prosecute the class claims. Plaintiff and his counsel will fairly and adequately represent the interest of the Class and the Subclasses.

104.     In part because the least-sophisticated-consumer standard applicable to the claims is an objective one, whether or not the Orlans PC Foreclosure Letter is misleading under the FDCPA and the Michigan debt collection statues presents overwhelmingly predominant common issues of fact and law.

105.     In part because the United States Court of Appeals for the Sixth Circuit has held that both the FDCPA and the RCPA are "strict liability" statutes, there are no defenses unique to individual class members that would create a predominance of individual issues.

106.     Litigation of these claims on a classwide basis is superior to individual litigation because, *inter alia:*

    a.  The amounts at issue in an individual case are so small that individual lawsuits would otherwise be economically infeasible for the vast majority of class members;

    b.  Individual lawsuits would overburden the Court; and

    c.  Individual class members do not typically have an interest in controlling litigation of their own claims.

107.     Class members will be identifiable from records in the possession or control of Orlans PC or that defendants have the effective power to obtain.

108.   Counsel for plaintiffs does not anticipate any significant case management issues that would militate against certifying the Class and the Subclasses.

109.   Additionally, and in the alternative, plaintiff requests certification of a Class and Subclasses under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief.

## COUNT I

FAIR DEBT COLLECTION PRACTICES ACT – ATTORNEY LETTERHEAD CLAIMS

15 U.S.C. § 1692, *et seq.*

(Against All Defendants)

110.   Plaintiff incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

111.   Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe are or have been regularly engaged, directly and indirectly, in the collection of mortgage debts.

112.   Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe are or have been "debt collectors" under the FDCPA. *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 459 (6th Cir. 2013) (reversing dismissal of FDCPA claim against law firm that initiated foreclosure proceedings on the ground that it was not a "debt collector").

113.   Exhibit A and B, and the Orlans PC Foreclosure Letter, are communications in connection with the collection of residential mortgage debts.

114.   Plaintiff and class members are consumers.

115.   The Orlans PC Foreclosure Letter is misleading, false, and/or deceptive in violation of 28 U.S.C. §§ 1692e, 1692e(3) & 1692e(10) for at least the reasons set forth in this Complaint.

116.   On information and belief, Linda Orlans and Alison Orlans, as owners, officers, managers, and executives of Orlans PC, participated, directly or indirectly, in formulating and

implementing the Orlans PC business practices that caused the Orlans PC Foreclosure Letter to be composed and sent to Garland and to members of the FDCPA Class, and in drafting, approving, authorizing, or directing its issuance on behalf of Orlans PC, such that each is individually liable for violating the FDCPA and for Orlans PC's violations of the FDCPA.

117.    On information and belief, Jane Doe and John Doe, as owners, officers, managers, or executives of Orlans PC, participated, directly or indirectly, in formulating and implementing the Orlans PC business practices that caused the Orlans PC Foreclosure Letter to be composed and sent to Garland and to members of the FDCPA Class, and in drafting, approving, authorizing, or directing its issuance on behalf of Orlans PC, such that each is individually liable for violating the FDCPA and for Orlans PC's violations of the FDCPA.

118.    Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe have profited from and were enriched by the acts and practices alleged herein to violate the FDCPA.

WHEREFORE, plaintiff prays that this Court:

- Certify the FDCPA Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and pursuant to Rule 23(c)(5);

- Designate him as class representatives;

- Designate plaintiff's counsel as class counsel;

- Enter judgment in favor of plaintiff Garland and each intervening FDCPA claimant who was sent a Orlans PC Foreclosure Letter dated on or after May 17, 2017, and against each defendant in the amount of $1,000.00, plus applicable pre-judgment interest;

- Enter judgment in favor of the FDCPA Subclass, and against each defendant in the amount of $500,000, or 1% of their respective net worth (whichever is less), to be distributed *pro rata* (net of any attorneys' fees and costs reimbursement awarded by this Court to class counsel) to each subclass member who does not properly request to be excluded from the class; provided;

- Enter an award in favor of plaintiff and the FDCPA Subclass  and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT II

REGULATION OF COLLECTION PRACTICES ACT – ATTORNEY LETTERHEAD CLAIMS

Michigan Compiled Laws § 445.251, *et seq.*

(Against All Defendants)

119.    Plaintiff incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

120.    Plaintiff's residential real estate mortgage and the debt secured thereby, and those of class members, were primarily for personal or household purposes for purposes of M.C.L. § 445.251(a). Plaintiff and all class members are consumers.

121.    Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe are each "regulated persons" under the RCPA.

122.    Exhibits A and B, and the Orlans PC Foreclosure Letter, are communications conveying information regarding residential mortgage debts.

123.    Plaintiff and all RCPA Subclass members suffered harm to their statutory rights under the RCPA not to be subject to misleading communications in connection with the collection of a debt.

124.    In light of the RCPA's purpose to avoid misleading communications by regulated persons, plaintiff and all RCPA Subclass members suffered an injury under the RCPA because the Orlans PC Foreclosure Letter suggests that the letters were sent by an attorney when they were not, rendering the letters misleading and causing actual and potential confusion, anxiety, and mental distress to plaintiff and class members.

125.     In light of the RCPA's purpose to avoid misleading communications by regulated persons, plaintiff and all RCPA Subclass members suffered an injury under the RCPA because the Orlans PC Foreclosure Letter are subject to two possible reasonable interpretations—that they were and that they were not authored by an attorney—rendering the letters misleading and causing actual and potential confusion, anxiety, and mental distress to plaintiffs and class members.

126.     Plaintiff and all class members had money collected from them by the use of the Orlans PC Foreclosure Letter in at least one of the following ways:

a.  Foreclosure of their homes via a sheriff's sale as threatened in the letters, with the proceeds of the sale applied to the mortgage debt due;

b.  Reinstatement of the mortgage declared to be default in the letters by payment of allegedly past-due amounts and fees, as solicited by the letters; or

c.   Redemption of the foreclosed real property within the statutory period by payment on the debtor's behalf of the amounts statutorily required.

127.     The Orlans PC Foreclosure Letters sent to RCPA Subclass members are misleading for at least the reasons set forth in this Complaint in violation of M.C.L. § 445.252(e).

128.     The Orlans PC Foreclosure Letters sent to plaintiff and to other RCPA Subclass members violates M.C.L. § 445.252(a) because they are on attorney letterhead when in fact they were not from an attorney, because they were not meaningfully reviewed by an attorney.

129.     In violation of M.C.L. § 445.252(q), Orlans PC has failed to implement procedures designed to prevent its employees from violating the RCPA as alleged in this Complaint.

130.     Orlans PC's, Linda Orlans', Alison Orlans', and Jane Doe's and John Doe's violations of the RCPA are willful.

131.     On information and belief, Linda Orlans and Alison Orlans, as owners, officers, managers, and executives of Orlans PC, participated, directly or indirectly, in formulating and

implementing the Orlans PC business practices that caused the Orlans PC Foreclosure Letter to be composed and sent to Garland and to members of the RCPA Subclass, and in drafting, approving, authorizing, or directing its issuance on behalf of Orlans PC, such that each is individually liable for violating the RCPA and for Orlans PC's violations of the RCPA.

132.   Orlans PC, Linda Orlans, Alison Orlans, and Jane Doe and John Doe profited from and were enriched by the acts and practices alleged herein to violate the RCPA.

WHEREFORE, plaintiff prays that this Court:

- Certify the RCPA Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(5);

- Designate plaintiff as representative for the class;

- Designate plaintiff's counsel as class counsel for the class;

- Enjoin defendants from engaging in further violations of the RCPA in connection with the Orlans PC Foreclosure Letter in any of the ways alleged in this Complaint as determined by the Court or at trial;

- Enter judgment in favor of plaintiff and the RCPA Subclass, and against defendants jointly and severally, in the amount of $200 for each plaintiff and for each class member who does not properly request exclusion from the RCPA Subclass;

- Enter an award in favor of plaintiff and the RCPA Subclass and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT III

DECLARATORY RELIEF

28 U.S.C. §§ 2201& 2202

(Against All Defendants)

133.    Plaintiff incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

134.    There is an actual controversy between plaintiff and the Class on one hand, and defendants on the other, regarding the whether the Orlans PC Foreclosure Letter violates the FDCPA and the RCPA as alleged.

135.    Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

136.    On information and belief, Orlans PC, Linda Orlans, Alison Orlans, Jane Doe, and John Doe continue to cause Orlan PC Foreclosure Letters to consumers that violate the FDCPA and the RCPA as alleged herein.

WHEREFORE, plaintiff prays that this Court enter a judgment declaring that:

a.    the Orlans PC Foreclosure Letter violates the FDCP by misleading the least sophisticated consumer as to whether or not it was from an attorney;

b.    the Orlans PC Foreclosure Letter violates the RCPA by misleading the least sophisticated consumer as to whether or not it was from an attorney; and

c.    such other and further declaratory relief to which plaintiff and the Class are entitled.

## JURY DEMAND

Plaintiff requests a trial by jury for every issue so triable.

Dated: May 17, 2018

Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. McGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone:  (734) 274-9374
drewmcg@topclasslaw.com

Samuel G. Firebaugh (P34276)
FIREBAUGH & ANDREWS PLLC
38545 Ford Rd, Ste 104
Westland, MI  48185
Phone: (734) 722-2999
samuelgfirebaugh@hotmail.com

*Counsel for Plaintiff and the Proposed Class*

EXHIBIT A

# ORLANS PC

A law firm licensed in
DC, DE, MA, MD, MI, NH, RI, VA

P.O. Box 5041
Troy, Michigan 48007
P (248) 502-1400  F (248) 502-1401
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AS TO THIS OBLIGATION, THIS COMMUNICATION IS INTENDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT IN VIOLATION OF THE AUTOMATIC STAY OR THE DISCHARGE INJUNCTION. IN SUCH CASE, PLEASE DISREGARD ANY PART OF THIS COMMUNICATION WHICH IS INCONSISTENT WITH THE FOREGOING.**

**OTHERWISE, THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO THE BENEFITS OF THE SERVICEMEMBERS' CIVIL RELIEF ACT.**

Freddie Garland and Linda Garland
15307 Stout Street
Detroit, Michigan 48223
Orlans PC File No.: 17-006843

May 18, 2017

Reference: 0532210614

Dear Freddie Garland and Linda Garland

**YOUR MORTGAGE LOAN HAS BEEN
REFERRED TO OUR FIRM FOR FORECLOSURE**

Our client, Wells Fargo Home Mortgage Inc., has referred your loan to us for foreclosure and requested that we send this notice. While the foreclosure process has begun, you may still have foreclosure prevention alternatives available to you.

If you have not already, you may provide information to Wells Fargo Home Mortgage Inc. about your situation and in return Wells Fargo Home Mortgage Inc. may use the information to determine whether you qualify for temporary or long-term relief which may include options that allow you to stay in your home (forbearance, repayment plan, modification) or leave your home (short sale, deed-in-lieu of foreclosure).

Wells Fargo Home Mortgage Inc. may have previously sent you a letter advising you of possible alternatives to foreclosure, along with the documents for you to complete and return to Wells Fargo Home Mortgage Inc., to be evaluated for these alternatives. Please contact Wells Fargo Home Mortgage Inc., at 866-234-8271, if you did not receive the documents, if you no longer have the documents, or if you have not returned all of the documents. A complete document package to Wells Fargo Home Mortgage Inc. is necessary for review of alternatives to foreclosure.

Wells Fargo Home Mortgage Inc. will be in contact regarding options and next steps after review of your documentation, if loss mitigation assistance is available. If you need assistance, contact Wells Fargo Home Mortgage Inc. at 866-234-8271. Please be advised that foreclosure will proceed unless we are advised otherwise by Wells Fargo Home Mortgage Inc.. This letter is a notification that it may not be too late to attempt to be reviewed for possible alternatives to foreclosure BUT is not a guarantee that you qualify for any possible alternatives to foreclosure.

Sincerely,
Orlans PC

17-006843/-/326/PRSOL

# EXHIBIT B

## NOTICE OF DEBT PURSUANT TO 15 USC §1692

1.      The amount of debt as of May 16, 2017 is $76,575.84.

2.      Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Wells Fargo Home Mortgage Inc. or Orlans PC at (248) 502-1400 to obtain an updated payoff amount.

3.      The name of the creditor to whom the debt is owed is U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle Bank National Association, as Trustee for Structure Asset Securities Corporation, Amortizing Residential Collateral Trust, Mortgage Pass-Through Certificates, Series 2004-1

4.      Unless you, within thirty days after receipt of t notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5.      If you notify Orlans PC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Orlans PC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by Orlans PC; and

6.      Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.