IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

FREDDIE GARLAND, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

ORLANS PC, et al.,

      Defendants.

Case No. 2:18-cv-11561

Hon. Denise Page Hood

Exec. Mag. Judge R. Steven Whalen

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Samuel G. Firebaugh (P34276)
FIREBAUGH & ANDREWS PLLC
38545 Ford Rd, Ste 104
Westland, MI  48185
Phone: (734) 722-2999
samuelgfirebaugh@hotmail.com

*Counsel for Plaintiff and the Proposed Class*

I. W. Winsten (P30528)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ AND
COHN LLP
660 Woodward Avenue, Suite 2290
Detroit, MI  48226
Phone: (313) 465-7608
iwinsten@honigman.com
bsegal@honigman.com

*Attorneys for Defendants*

_____/

## PLAINTIFF'S THIRD CITATION OF SUPPLEMENTAL AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMIS

In his Second Citation of Supplemental Authority (ECF #40, filed July 9, 2019), Plaintiff submitted the district court's decision in *Sevela v. Kozeny & McCubbin, L.C.,* No. 8:18CV390, 2019 U.S. Dist. LEXIS 80890, at *9-10 (D. Neb. May 2, 2019). *Sevela* distinguished *Obduskey v. McCarthy & Holthus LLP*, 139 S.

Ct. 1029,1035-36 (2019), on the basis that the law firm's challenged conduct went beyond activities required under the state nonjudicial foreclosure statute.

More recently, two additional district court cases have done the same. In *Cooke v. Carrington Mortg. Servs.,* Case No. 18-0205, 2019 U.S. Dist. LEXIS 120248; 2019 WL 3241128 (D. Md. July 18, 2019) (Exh. A, attached), defendant argued (as do Defendants here) that it was not a "debt collector" under *Obduskey*. The *Cooke* court held:

> Carrington, however, reads *Obduskey* too broadly. The Supreme
> Court's holding in *Obduskey* extends only to security interest enforcers
> engaged in nonjudicial foreclosure proceedings in a manner required by
> state law. *See* 139 S. Ct. at 1039 (stating that "we assume that the
> notices sent by [defendant] were antecedent steps required under state
> law to enforce a security interest" and reasoning that "we think the
> [FDCPA's] (partial) exclusion of 'the enforcement of security interests'
> must also exclude the legal means required to do so"). . . . Cooke
> asserts FDCPA claims against Carrington for a variety of conduct
> beyond standard procedures in a nonjudicial foreclosure . . . .
> Carrington has not identified any provision of Maryland law that
> required this conduct to enforce its security interest, and this Court is
> aware of none.

*Id*. at *6-7. The *Cooke* court cited *Sevela* in support of this holding. *Ibid*.

In *Gagnon v. Hal P. Gazaway & Assocs., LLC*, Case No. 3:19-cv-178, 2019 U.S. Dist. LEXIS 159684; 2019 WL 4539926 (D. Alaska Sept. 19, 2019) (Exh. B, attached), the district court also distinguished *Obduskey* on the grounds urged in Plaintiff's Supplemental Brief, as was done in *Sevela* and *Cooke*. *Gagnon* is even closer to the facts in the instant case, because as in Michigan:

> Alaska's statutory scheme governing non-judicial foreclosures is different [than the Colorado scheme at issue in *Obduskey*]. There is nothing in the Alaska statutory scheme which mentions, much less requires, a letter to be sent to the debtor. The *Obduskey* opinion makes clear that the requirement of state law was central to it holding that the letter at issue there did not subject the law firm to the full range of [the] FDCPA. Justice Sotomayer's concurring opinion gives further emphasis to the significance of the fact that the letter was required by state law.

*Id*. at \*5-6. *Cf.* Plaintiff's Supp. Br., ECF #35, at 1, 7-11 (Pg. ID 2063, 2069-73) (arguing that Michigan's nonjudicial foreclosure statute does not require the Orlans PC Foreclosure Letter). The *Gagnon* court accurately characterized the Supreme Court's ruling as "carefully cabined," 2019 U.S. Dist. LEXIS 159684 at \*6, and cited *Sevela* and *Cooke* as support for its ruling. *Id*. n. 17.

Third, *Bates v. Green Farms Condo. Ass'n,* No. 18-13533, 2019 U.S. Dist. LEXIS 146937; 2019 WL 4073395 (E.D. Mich. Aug. 29, 2019) (Cohn, J.) (Exh. C, attached), actually supports Plaintiff's opposition to Defendants' Motion to Dismiss this case. After noting that *Obduskey* had "abrogated" the Sixth Circuit's holding in *Glazer* that *all* foreclosure proceeding involved "debt collection," Judge Cohn proceeded to address the argument an argument in that case that defendant's activities went beyond security enforcement, and therefore subjected them to liability under the FDCPA.  2019 U.S. Dist. LEXIS 146937 at \*7-8.

*Bates* broke this discussion into two parts. First, relying on a quote from *Obduskey* that "he who wills the ends must will the necessary means, we think the

3

Act's (partial) exclusion of the 'the enforcement of security interests' must also exclude the legal means required to do so," 139 S. Ct. at 1039-40, *Bates* rejected the allegations of paragraphs 11-15 of the *Bates* complaint as sufficient to take the case out of the holding of *Obduskey*. *Bates* at *8. The *Bates* complaint is attached hereto as Exh. D. Paragraphs 11-15 allege:

- Wrongful foreclosure by advertisement on a lien recorded by a defendant; (¶ 11);
- False representations regarding delinquent condo association dues and fees, and recordation of a false lien (¶12);
- Foreclosure by advertisement (¶ 13);
- At a price that was below the property's market value (¶ 14); and
- Non-specific damages (¶ 15).

Exh. D, attached, at 3-4. This portion of the *Bates* analysis plainly rejected the notion that plaintiff in that case—with the possible exception of paragraph 12, was actually alleging activity beyond that necessary to effectuate a nonjudicial foreclosure. This is evident from the context of the *Obduskey* quote above cited by Judge Cohn. Two sentences before that quote, the Court reiterated: "But here we assume that the notices sent by McCarthy were antecedent steps required under state law to enforce a security interest." 1039 S. Ct. at 1039.

Second, and more importantly, Judge Cohn held:

> To the extent plaintiffs refer to paragraph 12 of their complaint, which includes an allegation that the Law Firm "falsely represented the character, amount or legal status of plaintiff's condominium association dues, as delinquent, held the cashiers [sic] checks paid by your plaintiffs and overstated and falsely added charges in violation of 15 U.S.C. § 1692e(2)(A) and recorded a false lien and foreclosed on the

4

real property[,]" [t]his allegation does not save plaintiffs' FDCPA claim. The allegation is conclusory and does not satisfy the pleading standard set forth in Rule 8.

*Bates* at \*8-9.[1] Critically, if the Bates court had concluded that *Obduskey* broadly excludes law firms engaged in foreclosure proceedings, as Defendants argue, with the limited exception contained in 15 U.S.C. §1692f(6), from the definition of "debt collector," *then there were have been no need to rely on Rule 8 as a basis for dismissing the complaint in that case*. The fact that the court did so therefore actually *supports* Plaintiff's argument in this case for distinguishing *Obduskey*.[2]

Dated: October 15, 2019

Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

---

[1] Defendants' Motion to Dismiss in the instant case does not challenge the adequacy of Plaintiff's allegations under Rule 8.

[2] Defendants recently submitted *Bates* as "directly on point" in ECF #43. They suggest that *Bates* also supports their request that this Court decline to exercise supplemental jurisdiction of the RCPA claim, while failing to note that *there was no RCPA claim in Bates*. *See* Exh. D, attached. Instead, the state law claims there were a slander of title claim and two conversion claims. *Id.*

5

Samuel G. Firebaugh (P34276)
FIREBAUGH & ANDREWS PLLC
38545 Ford Rd, Ste 104
Westland, MI  48185
Phone: (734) 722-2999
samuelgfirebaugh@hotmail.com

*Counsel for Plaintiff and the Proposed Class*

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

*/s/ Andrew J. McGuinness*
Andrew J. McGuinness

# EXHIBIT A

# Cooke v. Carrington Mortg. Servs.

United States District Court for the District of Maryland

July 17, 2019, Decided; July 18, 2019, Filed

Civil Action No. TDC-18-0205

**Reporter**
2019 U.S. Dist. LEXIS 120248 *; 2019 WL 3241128

GLORIA COOKE, Plaintiff, v. CARRINGTON MORTGAGE SERVICES, Defendant.

**Prior History:** Cooke v. Carrington Mortg. Servs., 2018 U.S. Dist. LEXIS 204730 (D. Md., Dec. 3, 2018)

**Counsel:** **[*1]** For Gloria Cooke, Plaintiff: Quinn Breece Lobato, LEAD ATTORNEY, Lobato Law, Lanham, MD.

For Carrington Mortgage Services, LLC, Defendant: Thomas John Gartner, LEAD ATTORNEY, Shapiro & Brown, LLP, Manassas, VA; William Mapp Savage, LEAD ATTORNEY, Shapiro Brown & Alt, LLP, Manassas, VA.

**Judges:** THEODORE D. CHUANG, United States District Judge.

**Opinion by:** THEODORE D. CHUANG

## Opinion

### MEMORANDUM OPINION

Plaintiff Gloria Cooke has filed this action against Carrington Mortgage Services ("Carrington") alleging various federal and state statutory violations in connection with Carrington's efforts to foreclose on Cooke's mortgage. Pending before the Court is Carrington's second Motion to Dismiss, ECF No. 46, in which Carrington seeks partial dismissal of the Second Amended Complaint filed by Cooke. Having reviewed the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The factual background is set forth in the Court's Memorandum Opinion on Carrington's first Motion to Dismiss and is incorporated by reference. *See Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2018 U.S. Dist. LEXIS 204730, 2018 WL 6323116, at *1-2 (D. Md. Dec. 3, 2018). The Court therefore summarizes only **[*2]** the procedural history and new allegations relevant to the present Motion.

On December 19, 2016, Cooke filed the present case in the Circuit Court for Prince George's County, Maryland. After Carrington timely removed the action to this Court, Cooke filed an Amended Complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2012); the Maryland Consumer Debt Collection Practices Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 to 14-204 (West 2013); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 to 13-501; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012); and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x (2012). On May 18, 2018, Carrington filed a Motion to Dismiss the Amended Complaint for failure to state a claim.

On December 3, 2018, the Court issued a Memorandum Opinion granting in part and denying in part Carrington's first Motion to Dismiss. The Court dismissed Cooke's FDCPA claims under 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692f, as well as her MCDCA claims and her MCPA claims based on the MCDCA. The Court denied the Motion as to the remaining counts.

On December 17, 2018, Cooke filed a Notice of Intent to File a Motion for Reconsideration and/or a Motion for Leave to File a Second Amended Complaint pursuant to the Court's **[*3]** Case Management Order. After a conference with counsel for both parties, the Court granted Cooke leave to file a Second Amended Complaint but ordered that "[t]he amendments shall be limited to the counts that were dismissed in the Court's December 3, 2018 Memorandum Opinion and the deficiencies identified therein." ECF No. 39. Similarly, the Court ordered that any subsequent motion to dismiss filed by Carrington be limited to Cooke's new allegations.

Cooke filed her Second Amended Complaint on January 31, 2019. The Second Amended Complaint asserts additional bases for liability against Carrington under the FDCPA, MCDCA, and RESPA.

## DISCUSSION

In its second Motion to Dismiss, Carrington argues that (1) the amended FDCPA claims should be dismissed because it is not a "debt collector" subject to the FDCPA and because Cooke fails to allege that it engaged in conduct prohibited by the FDCPA; (2) the amended MCDCA claims should be dismissed because Cooke fails to allege plausibly that Carrington did not have a right to foreclose on her property or that it acted with the required knowledge; and (3) the amended RESPA claim should be stricken because it is outside the scope of the Court's order **[*4]** granting Cooke leave to file her Second Amended Complaint.

### I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. FDCPA

In Count One of the Second Amended Complaint, Cooke asserts additional bases for liability against Carrington under the FDCPA. The FDCPA is violated when (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub nom., Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Carrington does not dispute the first element but argues that Cooke's amended FDCPA claims fail because it is not a "debt collector" within the meaning of the Act and because Cooke fails **[*5]** to allege that it violated a provision of the Act.

### A. Debt Collector

The FDCPA only regulates the activities of "debt collector[s]." 15 U.S.C. §§ 1692b-1692g, 1692k(a). As the United States Supreme Court recently observed, the Act contains both a "primary definition" and a "limited-purpose definition" of the term "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029,1035-36, 203 L. Ed. 2d 390 (2019). The primary definition provides that the term "means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The limited-purpose definition states: "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." *Id.*

In *Obduskey*, decided since the Court ruled on the first Motion to Dismiss, the Supreme Court considered the interplay of these definitions to determine whether a law firm carrying out a nonjudicial foreclosure was a "debt collector" subject to the FDCPA. 139 S. Ct. at 1033-36. It found that the "limited-purpose definition narrows the primary definition, so that the debt-collector-related prohibitions of the FDCPA (with **[*6]** the exception of § 1692f(6)) do *not* apply to those who ... are engaged in no more than security-interest enforcement." *Id.* at 1037. The Supreme Court then held that the defendant law firm fell within the FDCPA's limited-purpose definition when it initiated a nonjudicial foreclosure in the manner required by state law. *Id.* at 1037-39. Accordingly, the law firm was only subject to § 1692f(6) of the FDCPA. *Id.*

Carrington argues that *Obduskey* forecloses all of Cooke's FDCPA claims except for those brought under § 1692f(6) because it is only a "debt collector" within the limited-purpose definition of the FDCPA. Carrington, however, reads *Obduskey* too broadly. The Supreme Court's holding in *Obduskey* extends only to security-interest enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law. *See* 139 S. Ct. at 1039 (stating that "we assume that the notices

sent by [defendant] were antecedent steps required under state law to enforce a security interest" and reasoning that "we think the [FDCPA's] (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so"). Here, unlike in *Obduskey*, Carrington was not a law firm retained solely to execute a nonjudicial foreclosure. Cooke asserts FDCPA claims against **[\*7]** Carrington for a variety of conduct beyond standard procedures in a nonjudicial foreclosure, including contradicting her right to dispute the debt, collecting or threatening to collect an inflated mortgage reinstatement amount, threatening to foreclose on her property before it was permitted by law, and misrepresenting its compliance with the terms of the deed of trust. Carrington has not identified any provision of Maryland law that required this conduct to enforce its security interest, and this Court is aware of none. *See* Md. Code Ann., Real Prop. §§ 7-105 to 7-105.8 (West 2019) (outlining foreclosure requirements), *amended by* H.B. 107, 2019 Leg., Ch. 93 (Md. 2019) (effective Oct. 1, 2019). Therefore, *Obduskey* does not except Carrington from the full coverage of the FDCPA and thus does not provide a basis for dismissal of any of Cooke's FDCPA claims. *See Sevela v. Kozeny & McCubbin, L.C.*, No. LSC-18-0390, 2019 U.S. Dist. LEXIS 80890, 2019 WL 2066924, at \*4-5 (D. Neb. May 2, 2019) (holding that the defendant law firm was a "debt collector" subject to the full coverage of the FDCPA when it sent a letter to plaintiff attempting to collect his debt because the letter was not required by state law to pursue a nonjudicial foreclosure).

Carrington further argues, more broadly, that it is not a "debt collector" **[\*8]** subject to any provisions of the FDCPA because Carrington is a loan servicer, and Cooke nowhere alleges that her mortgage was in default at the time it was transferred to Carrington. The Court notes at the outset that this argument is outside the scope of the Court's order of January 9, 2019, which stated that "[i]f, following the submission of the amended complaint, Defendant intends to file a motion to dismiss ... the Motion shall be limited to Plaintiff's new allegations and shall not revisit any previously litigated issues in the first Motion to Dismiss." ECF No. 39. This argument regarding Carrington's "debt collector" status does not pertain to any of Cooke's new allegations and, unlike its argument that rests on *Obduskey*, it is not based on any intervening case law.

In any event, this argument is without merit. A loan servicer is considered a "debt collector" within the meaning of the FDCPA if the loan is in default at the time it commences servicing or if the servicer treats the loan as if it is in default. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (holding that "the definition of debt collector ... includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it **[\*9]** were in default at the time of acquisition"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537-38 (7th Cir. 2003) (holding that a servicer was a debt collector where it mistakenly believed that the loan was in default when it acquired it and took actions exhibiting an intent to collect the debt); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 277 (D. Md. 2015) (finding that the plaintiffs plausibly alleged the defendant loan servicer was a "debt collector" under the FDCPA where they asserted that their loan was not in default when the defendant acquired it but that the defendant "believed the associated account was in default ... and has attempted and actually collected on [it]"). Here, Cooke alleges that "[a]t the time of the transfer [to Carrington], BOA claimed the mortgage loan was still in default," that Carrington sent her a mortgage statement warning that failure to bring the loan current could result in foreclosure, and that, three weeks after the transfer, Carrington sent her a Notice of Intent to Foreclose. Second Am. Compl. ¶¶ 13-14, 18, 23, ECF No. 41. These allegations lead to the plausible inference that Carrington treated Cooke's loan as if it was in default when it was transferred to it from BOA and, thus, that Carrington is a "debt collector" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6).

## B. Section 1692e

The remaining **[\*10]** question relating to the FDCPA claims is whether Cooke plausibly alleges that Carrington engaged in conduct prohibited by the statute. The Second Amended Complaint asserts multiple additional violations of the FDCPA, including violations of 15 U.S.C. § 1692e(5) and (10). Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Cooke alleges that Carrington violated this provision by threatening to foreclose before it was permitted by Maryland law, which prohibits foreclosure sales of residential property until 45 days after service of process of the foreclosure Order to Docket. *See* Md. Code Ann., Real Prop. § 7-105.1(n). Specifically, Cooke alleges that Carrington sent her a letter on or about December 22, 2015 in which it "threaten[ed] to accelerate and sell the Property after 45 days elapsed"

if she failed to cure the default. Second Am. Compl. ¶¶ 24, 78. Cooke interpreted this letter to mean that a foreclosure sale could occur as soon as 45 days after the date of the letter. Under Maryland law, however, where she was not served with the Order to Docket until March 24, 2016, a foreclosure sale was not permitted until May 8, 2016, 45 days after service was effected. **[\*11]**

Carrington argues that this claim should be stricken because the Court "already determined that sending the Notice of Intent to Foreclose is no basis for a claim under § 1692e(5)." Mot. Dismiss at 6-7, ECF No. 46. This argument, however, rests on a misreading of Cooke's claim and the Court's prior Memorandum Opinion. Cooke's § 1692e(5) claim is based not on the Notice of Intent to Foreclose sent to Cooke but rather on the letter sent to her "[c]ontemporaneously ... with the Notice of Intent" in which Carrington "threaten[ed] that Plaintiff's loan could be accelerated and sold at a foreclosure sale" before it was permissible under Maryland law. Second Am. Compl. ¶¶ 24, 26. In its prior Memorandum Opinion, the Court did not consider, much less determine, whether such conduct could support liability under the FDCPA. Rather, in dismissing Cooke's FDCPA claim that Carrington violated § 1692e(5) and § 1692f(6) by "threatening to sell Plaintiff's Property at a public auction when they had no legal right to [sell] the Property," the Court rejected Cooke's claim that foreclosure cannot occur absent possession of the original note and thus concluded that Cooke had failed to allege plausibly that Carrington did not have a right to foreclose **[\*12]** on her property generally. *Cooke*, 2018 U.S. Dist. LEXIS 204730, 2018 WL 6323116, at \*5.

The Court further finds that Cooke has stated a claim for a violation of § 1692e(5) based on this conduct. The least sophisticated debtor could interpret Carrington's statement "that [Cooke's] loan could be accelerated and sold at a foreclosure sale if [she] failed to cure the default within 45 days" as a threat to sell her property through foreclosure after 45 days elapsed. Second Am. Compl. ¶ 24. *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135-36, 139 (4th Cir. 1996) (adopting the "least sophisticated debtor" standard to determine whether notices from debt collector violate § 1692e(5) and § 1692e(10)); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195-96 (11th Cir. 2010) (finding that reasonable jurors applying the least sophisticated consumer standard could view defendant's letter as a "threat" under § 1692e(5) where it stated, in relevant part: "If we are unable to resolve this issue within 35 days, we may refer this matter to an attorney in your area for legal consideration."). Conducting a foreclosure sale immediately after this 45-day period elapsed was an action that could not "legally be taken" because Cooke alleges that she was not served with the foreclosure Order to Docket until over three months after she received this letter, on March 24, 2016, and Maryland law prohibits foreclosure sales until 45 days after **[\*13]** that time. 15 U.S.C. § 1692e(5); Md. Code Ann., Real Prop. § 7-105.1(n). *See also Farber v. Brock & Scott, LLC*, No. TDC-16-0117, 2016 U.S. Dist. LEXIS 139574, 2016 WL 5867042, at \*5-6 (D. Md. Oct. 6, 2016) (finding that the plaintiffs stated a claim for violation of § 1692e(5) where they alleged that the defendant scheduled a foreclosure sale before it was permissible under state law). Therefore, Cooke has stated a claim for a violation of § 1692e(5).

Cooke also alleges that Carrington violated § 1692e(5) by threatening and scheduling a foreclosure sale before it acted on her loss mitigation application. This theory of liability under the FDCPA relies on a provision of RESPA's implementing regulations, also known as "Regulation X," which are codified at 12 C.F.R. §§ 1024.1-1024.41. Subpart C of Regulation X is titled "Mortgage Servicing" and contains a provision that regulates loan servicers' loss mitigation procedures. *See* 12 C.F.R. § 1024.41 (2016). Under that section, a servicer that receives a borrower's "complete loss mitigation application more than 37 days before a foreclosure sale" must evaluate the borrower for all loss mitigation options, provide the borrower with written notice of its options, if any, and notify the borrower in writing if its application has been rejected. 12 C.F.R. § 1024.41(c)-(d). "[A] servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" **[\*14]** unless it has notified the borrower that the loss mitigation application was denied and the borrower has exhausted its appeal rights. 12 C.F.R. § 1024.41(g).

Carrington argues that Cooke's FDCPA claim based on its alleged violation of RESPA's loss mitigation procedures should be dismissed because Cooke nowhere alleges that she submitted a "complete" loss mitigation application. This argument is without merit. Cooke alleges that she submitted a "loss mitigation application" on November 28, 2016 and, viewing the allegations in the light most favorable to her, the Court can plausibly infer that this was a complete loss mitigation application. Second Am. Compl. ¶ 54. Cooke further asserts that Carrington had not yet acted on that application when it scheduled a foreclosure sale to take place in April 2017, more than 37 days later. Because

RESPA prohibits a foreclosure sale before such an application has been denied and all appeal rights exhausted, the scheduling of this sale could constitute a debt collector's "threat" to take an action "that cannot legally be taken" in violation of § 1692e(5). 15 U.S.C. § 1692e(5); 12 C.F.R. § 1024.41(g). *See Weisheit v. Rosenberg & Assocs., LLC*, No. JKB-17-0823, 2017 U.S. Dist. LEXIS 188605, 2017 WL 5478355, at *6 (D. Md. Nov. 15, 2017) (finding that the plaintiff stated a claim for a violation of **[*15]** § 1692e where she alleged that the defendant scheduled a foreclosure sale of her property and notified her of the sale before it completed the loss mitigation procedures under RESPA); *Farber*, 2016 U.S. Dist. LEXIS 139574, 2016 WL 5867042, at *6 (finding that the plaintiffs stated a claim for a violation of § 1692e(5) where they alleged that the defendant scheduled a foreclosure sale before it had finished evaluating their loss mitigation application).

Cooke also alleges that Carrington violated § 1692e(5) by threatening to foreclose before it was permissible under the deed of the trust. Specifically, Cooke asserts that her mortgage was insured by the Federal Housing Administration ("FHA") and that the deed of trust thus required the lender or servicer to hold a face-to-face meeting with her before filing a foreclosure action. Cooke further alleges that neither Carrington nor any other entity attempted to conduct a face-to-face meeting with her before it threatened, filed, and scheduled a foreclosure sale. These allegations are sufficient to state a claim for a violation of § 1692e(5).

Cooke relies on the same conduct to assert a violation of § 1692e(10), which prohibits "the use of false representations or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Threatening and scheduling **[*16]** a foreclosure sale before a foreclosure sale was permitted by the deed of trust could be considered a "false representation" in violation of this provision. *See Weisheit*, 2017 U.S. Dist. LEXIS 188605, 2017 WL 5478355, at *6. Therefore, Cooke also states a claim for violation of § 1692e(10) based on this conduct.

## C. Section 1692f(6)

The Second Amended Complaint also alleges violations of 15 U.S.C. § 1692f(6). That section prohibits, in relevant part, "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through

an enforceable security interest." 15 U.S.C. § 1692f(6). Cooke's amended § 1692f(6) claims are identical to her amended § 1692e(5) claims. That is, she alleges that Carrington violated § 1692f(6) by threatening foreclosure and scheduling a foreclosure sale before such a sale was permitted by Maryland law, RESPA, and the deed of trust. This alleged conduct could also constitute a violation of this provision. *See Weisheit*, 2017 U.S. Dist. LEXIS 188605, 2017 WL 5478355, at *6-7 (finding that the plaintiff stated a claim for violations of § 1692e and § 1692f(6) where she alleged that the defendant scheduled a foreclosure sale of her property and notified her of the sale before it completed the loss mitigation procedures under RESPA); *Farber*, 2016 U.S. Dist. LEXIS 139574, 2016 WL 5867042, at *6 (holding that "the scheduling and advertising of **[*17]** a foreclosure sale at [a] time when there was no legal right to conduct the sale could also violate 15 U.S.C. § 1692f").

Carrington argues, however, that Cooke's § 1692f(6) claims must be dismissed because they are based on the same conduct that underlies her § 1692e(5) claims. The Court previously dismissed certain § 1692f claims because they were duplicative of other FDCPA claims. *See Cooke*, 2018 U.S. Dist. LEXIS 204730, 2018 WL 6323116, at *6. Some courts have held that a § 1692f claim duplicative of other FDCPA claims need not be dismissed if it alleges a violation of one of the enumerated provisions such as § 1692f(6). *See, e.g., Weisheit*, 2017 U.S. Dist. LEXIS 188605, 2017 WL 5478355, at *7 ("Section 1692f is a catch-all that can only serve as the basis for liability when a debt collector has not violated any other provision of the FDCPA, *unless* a plaintiff alleges that a debt collector engaged in conduct explicitly prohibited in Section 1692f's list."); *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (observing that there is a "growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA"). However, the United States Court of Appeals for the Fourth Circuit has yet to draw that distinction. *See Lembach*, 528 F. App'x at 303-04 (dismissing the plaintiffs' § 1692f claim where **[*18]** it was based on the same conduct underlying their § 1692e claim). Accordingly, the Court will grant Carrington's Motion to Dismiss Cooke's § 1692f(6) claims.

## III. MCDCA

In Count Two, Cooke asserts additional bases for liability against Carrington under section 14-202(8) of the MCDCA. That section provides that, "in collecting or attempting to collect an alleged debt," a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). Cooke's additional theories for liability under the MCDCA mirror those for liability under the FDCPA in that she alleges that Carrington violated section 14-202(8) by: (1) "claiming and threatening to accelerate and sell the Property after 45 days elapsed from December 22, 2015, when [it] knew it could not conduct a foreclosure sale because it had not even yet filed the foreclosure action"; (2) "claiming, attempting and threatening to foreclose on [her] Property when [Carrington] knew it did not comply with all conditions precedent—attempting to hold a face-to-face meeting—in the [deed of trust], and had no right to initiate foreclosure"; and (3) "threatening to hold a foreclos[ure] auction sale without acting on Plaintiff's loss mitigation application that [Carrington] **[\*19]** received well-over 37 days prior to the date of the scheduled foreclosure auction sale." Second Am. Compl. ¶¶ 86-88.

Carrington argues that Cooke's MCDCA claims should be dismissed because Cooke does not dispute the validity of the underlying debt. The MCDCA, however, "focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012), *aff'd*, 574 F. App'x 278 (4th Cir. 2014); *see also Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011) (stating that the MCDCA "prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a *delinquent* debt") (citation omitted) (emphasis added). Accordingly, a borrower need not contest the validity of the underlying debt in order to state a viable claim under the MCDCA. *See, e.g., Bradshaw*, 765 F. Supp. 2d at 723, 732-33 (holding that the defendant violated section 14-202(8) of the MCDCA when it attempted to collect a defaulted debt without the required state license); *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 198 A.3d 879, 888 (Md. Ct. Spec. App. 2018) (finding that plaintiffs stated a claim for a violation of section 14-202(8) of the MCDCA where they acknowledged that they owed several months of delinquent assessment fees but challenged the defendant's "methods in filing liens"); *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 U.S. Dist. LEXIS 120645, 2014 WL 4295048, at *10 (D. Md. Aug. 29, 2014) ("For purposes of Section 14-202(8), whether the [plaintiff's] Loan was in default is **[\*20]** beside the point; even assuming the loan was in default, if the debt collector went about collecting the debt in the wrong way, it violates the law.").

Carrington further argues that Cooke's additional MCDCA claims should be dismissed because she does not plausibly allege that Carrington "had *knowledge* that it had no right to proceed with a foreclosure sale." Mot. Dismiss at 11-12. This argument is also unavailing. The "knowledge" requirement of the MCDCA refers to "actual knowledge or reckless disregard as to the falsity of the information or the existence of the right." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999). Here, where Cooke alleges that Carrington was the servicer of her mortgage loan and sent her notices claiming knowledge of the status of her debt and describing her legal rights, it is reasonable to infer that Carrington had knowledge of the terms of the deed of trust and the applicable legal requirements. Cooke also asserts that she challenged the legality of Carrington's scheduling of the foreclosure in light of her pending loss mitigation application. Moreover, although the Court can plausibly infer that Carrington, a mortgage servicing company, knew the requirements for foreclosure under Maryland law and RESPA, **[\*21]** any lack of knowledge due to mistake of law would not save it from liability under the MCDCA. *See Fontell*, 870 F. Supp. 2d at 407 ("[If] Defendants' ignorance ... was a mistake of law, their professed lack of knowledge would not save them from liability under the MCDCA."); *Spencer*, 81 F. Supp. 2d at 594 (holding that "the term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law"). Accordingly, Cooke has plausibly alleged facts supporting an inference of "actual knowledge or reckless disregard" of the illegality of foreclosure at the time that Carrington threatened and scheduled a foreclosure sale. *Spencer*, 81 F. Supp. 2d at 595.

Therefore, the Court denies Carrington's Motion to Dismiss Cooke's amended MCDCA claims. In addition, because Count Three of the Second Amended Complaint asserts claims under the MCPA based on violation of the MCDCA, that count also stands. *See* Md. Code Ann., Com. Law § 13-301(14)(iii) (stating that a violation of the MCDCA is a *per se* violation of the MCPA).

## IV. RESPA

In Count Four of the Second Amended Complaint, Cooke asserts an additional basis for liability against Carrington under RESPA. Specifically, she alleges that Carrington "violated § 2605(f) by scheduling a foreclosure sale without acting on Plaintiffs loss mitigation application that was sent **[*22]** more than 37 days prior to the scheduled foreclosure auction sale." Second Am. Compl. ¶ 109. Carrington argues that this allegation should be stricken because the Court did not dismiss any of Cooke's RESPA claims in its prior Memorandum Opinion, such that it is outside the scope of the Court's order granting Cooke leave to file a Second Amended Complaint.

Carrington is correct that Cooke's additional basis for liability under RESPA is outside the scope of the Court's order granting Cooke leave to file a Second Amended Complaint. That order provided that "[t]he amendments shall be limited to the counts that were dismissed in the Court's December 3, 2018 Memorandum Opinion and the deficiencies identified therein." ECF No. 39. However, this RESPA claim parallels Cooke's amended FDCPA and MCDCA claims and was filed before the deadline for motions to amend the pleadings. Furthermore, the Court has considered an argument for dismissal offered by Carrington that was outside the scope of the Court's order of January 9, 2019. *See supra* Section II.A. Under these circumstances, the Court will allow the additional RESPA claim to stand rather than require Cooke to file another motion for leave to **[*23]** amend the complaint.

## CONCLUSION

For the foregoing reasons, Carrington's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. It is granted as to the FDCPA claims under 15 U.S.C. § 1692f(6) and is otherwise denied.

Date: July 17, 2019

/s/ Theodore D. Chuang

THEODORE D. CHUANG

United States District Judge

## ORDER

For the reasons set forth in the foregoing Memorandum, it is hereby ORDERED:

1. Defendant's Motion to Dismiss, ECF No. 46, is

GRANTED IN PART and DENIED IN PART.
2. The Motion is granted in that the Court will dismiss the Fair Debt Collection Practices Act claims under 15 U.S.C. § 1692f(6).
3. Defendant's Motion is otherwise DENIED.
4. Defendant shall file an Answer within 14 days of the date of this Order.

Date: July 17, 2019

/s/ Theodore D. Chuang

THEODORE D. CHUANG

United States District Judge

---

**End of Document**

# EXHIBIT B

# Gagnon v. Hal P. Gazaway & Assocs., LLC

United States District Court for the District of Alaska

September 19, 2019, Decided; September 19, 2019, Filed

3:19-cv-178 JWS

**Reporter**
2019 U.S. Dist. LEXIS 159684 *; 2019 WL 4539926

Rebecca Gagnon, Plaintiff, vs. Hal P. Gazaway and Associates, LLC, Defendant.

**Counsel:** **[1]** For Rebecca Gagnon, Plaintiff: Goriune Dudukgian, James J. Davis, Jr., LEAD ATTORNEYS, Northern Justice Project, Anchorage, AK.

For Hal P. Gazaway and Associates, LLC, Defendant: Hal P. Gazaway, LEAD ATTORNEY, Hal P. Gazaway, Anchorage, AK.

**Judges:** JOHN W. SEDWICK, SENIOR, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOHN W. SEDWICK

# Opinion

### ORDER AND OPINION

### [Re: Motion at docket 9]

### I. MOTION PRESENTED

At docket 9, defendant Hal P. Gazaway and Associates, LLC ("Defendant") moves to dismiss the complaint filed by plaintiff Rebecca Gagnon ("Plaintiff"). In the alternative, Defendant asks the court to stay this case pending resolution of a state court case which is set for trial on July 13, 2020. While Plaintiff does not mention it in his motion, the request to dismiss the complaint is clearly brought pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff responds at docket 10, and Defendant replies at docket 13. Oral argument has not been requested and would not assist the court.

### II. BACKGROUND

Defendant sent a letter dated September 26, 2017, to Plaintiff ("the Letter"). The Letter advised Plaintiff that she had failed to pay Defendant's client Alpine Village Condominium Association the sum of $371.99 due on the first of each month commencing on October **[2]** 1, 2013. Prominently displayed in a box above the salutation, the Letter proclaimed, "The purpose of this letter is to collect a debt." The Letter went on to state that as of October 1, 2017, Plaintiff would need to pay $3,155.32, consisting of monthly dues and special assessments of $2,545.32 plus late charges of $360 and attorneys' fees of $250, to cure her default. The Letter further advised that if the payment were not made in 30 days, a foreclosure proceeding would be commenced and that once a foreclosure was commenced, the amount to be paid would increase to a higher amount as specified in the Letter.[1]

Plaintiff brings her complaint pursuant to the Fair Debt Collection Practices Act[2] ("FDCPA"). Her complaint sets forth two claims for relief. In Count 1 she alleges that Defendant violated 15 U.S.C. § 1692g(a), which would entitle Plaintiff to recover damages pursuant to 15 U.S.C. § 1692k(a).[3] Count II alleges Defendant violated 15 U.S.C. § 1692e, which would also entitle Plaintiff to recover damages pursuant to 15 U.S.C. § 1692k(a).

### III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving **[3]** party."[4] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

_____

[1] Doc. 1-1.

[2] 15 U.S.C. §§ 1692, *et seq.*

[3] Doc. 1 at pp. 4-5.

[4] *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

opposing party to defend itself effectively."[5] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[6] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[7]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[10] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] "In sum, for a complaint to survive a motion [*4] to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[12]

## IV. DISCUSSION

Plaintiff alleges that Defendant regularly engages in the collection of consumer debt.[13] Under the Rule 12(b)(6) standard, the court must accept this allegation of material fact as true. Plaintiff also alleges that the Letter's purpose is to collect a debt. That material fact

---

[5] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[6] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[7] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

[9] *Id.*

[10] *Id.* (citing *Twombly*, 550 U.S. at 556).

[11] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[12] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[13] Doc. 1 at ¶ 5.

cannot be disputed, because the Letter specifically states that such is its purpose.

In Count I, Plaintiff contends 15 U.S.C. § 1692g(a) required Defendant to give her a debt validation notice within five days from the date of Defendant's first communication with her. In Count I, Plaintiff also contends that 15 U.S.C. § 1692g(a)(3) required Defendant to inform her that she had thirty days from the receipt of the debt validation notice to request Defendant to provide her with proof of the debt's validity. Plaintiff alleges that Defendant did not comply with either requirement. In Count II, Plaintiff contends that Defendant violated 15 U.S.C. § 1692e, because the Letter made a false representation about the character, amount or legal status of the debt it sought to collect.

To support dismissal [*5] of Plaintiff's claims, Defendant relies on its interpretation of the recent Supreme Court decision in *Obduskey v. McCarthy & Holthus LLP*.[14] Defendant argues that because it was attempting to complete a non-judicial foreclosure, it is not a debt collector under *Obduskey* and so cannot violate the FDCPA. This argument does not withstand scrutiny.

In *Obduskey*, the Court considered an action brought against a law firm engaged to bring a non-judicial foreclosure on Obduskey's home in Colorado. Colorado, like Alaska, has statutes which authorize non-judicial foreclosures. Obduskey argued that the law firm was a debt collector within the meaning of the FDCPA and that the law firm had violated the statute. The Court examined the FDCPA in detail and concluded that the law firm was not a debt collector for purposes of the FDCPA except that the law firm was subject to § 1692f(6).

In *Obduskey*, the law firm sent a letter to the debtor prior to commencing the non-judicial foreclosure. The Court's analysis proceeded on the basis that the letter was required by Colorado statutes governing non-judicial foreclosures. Alaska's statutory scheme governing non-judicial foreclosures is different. It requires the entity [*6] seeking foreclosure to record a detailed notice in the appropriate recording district and then to mail a copy of the detailed notice to specified persons including the debtor.[15] There is nothing in the Alaska statutory scheme which mentions, much less requires, a letter to be sent to the debtor. The *Obduskey* opinion

---

[14] 139 S.Ct. 1029, 203 L. Ed. 2d 390 (2019).

[15] AS 34.20.070 (b), (c).

makes clear that the requirement of state law was central to its holding that the letter at issue there did not subject the law firm to the full range of FDCPA. Justice Sotomayor's concurring opinion gives further emphasis to the significance of the fact that the letter was required by state law.[16]

Given the carefully cabined discussion in *Obduskey*, this court concludes that the Letter does not escape scrutiny under FDCPA. Defendant has not cited any post-*Obduskey* case which supports its position. However, other district court decisions made subsequent to *Obduskey* set out conclusions like the one this court has reached.[17]

Defendant's alternate request is to stay this action pending resolution of Alaska Superior Court case *Gagnon v. Hal P. Gazaway and Associates, LLC* ("State Case").[18] Defendant says the State Case involves **[\*7]** the same parties and involves the same condominium which is the subject of the foreclosure. Plaintiff says the issues in the State Case "are whether Alaska state law allows for the non-judicial foreclosure of common expense liens, and whether a debt collector violates [state statutes] by falsely threatening 'the non-judicial foreclosure of a common expense lien . . . .'"[19] In its reply Defendant does not dispute Plaintiff's characterization of the issues, but contends that Plaintiff could have pled the claims before this court in the State Case, so she is forum shopping. The claims pled in this court are federal law claims. The claims pled in the State Case are state law claims. Plaintiff could have pled all her claims in state court, but that does not mean that she was required to do so. Choosing to pursue federal law claims in federal court and separate state law claims in state court does not constitute forum shopping.

## V. CONCLUSION

For the reasons set out above, the motion at docket 9 is DENIED.

DATED this 19th day of September 2019.

/s/ JOHN W. SEDWICK

SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

**End of Document**

---

[16] 139 S.Ct. at 1040-41.

[17] *Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2019 U.S. Dist. LEXIS 120248, 2019 WL 3241128 (D. Md. July 18, 2019); *Sevela v. Kozeny & McCubbin, L.C.*, No. 8:18-cv-390, 2019 U.S. Dist. LEXIS 80890, 2019 WL 2066924 (D. Neb. May 2, 2019).

[18] Case No. 3AN-18-07802 CI (Alaska Super. Ct. Mar. 20, 2019).

[19] Doc. 10 at pp. 6-7.

# EXHIBIT C

# Bates v. Green Farms Condo. Ass'n

United States District Court for the Eastern District of Michigan, Southern Division

August 29, 2019, Decided; August 29, 2019, Filed

Case No. 18-13533

**Reporter**
2019 U.S. Dist. LEXIS 146937 *; 2019 WL 4073395

TODD and MARICA BATES, Plaintiffs, v. GREEN FARMS CONDOMINIUM ASSOCIATION, THE HIGHLANDER GROUP, and MAKOWER ABBATE GUERRA WEGER VOLLMER, PLLC, Defendants.

**Counsel:** **[*1]** For Todd Bates, Marcia Bates, Plaintiffs: Paul G. Valentino , Jr., Lehman & Valentino, Bloomfield Hills, MI.

For Green Farms Condominium Association, The Highlander Group MMC, Inc., Defendant: John L. Weston, Secrest, Wardle, Troy, MI.

For Makower Abbate Guerra Wegner Vollmer, PLLC, Defendant: Jesse Louis Roth, Maddin, Hauser, Roth & Heller, P.C., Southfield, MI; Kathleen H. Klaus, Maddin, Hauser, Southfield, MI.

**Judges:** AVERN COHN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** AVERN COHN

# Opinion

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Docs. 22, 23) AND DISMISSING CASE** [1]

I. Introduction

This is a consumers rights case. Plaintiffs Todd and Marcia Bates have sued the following defendants: Green Farms Condominium Association (Association), the Highlander Group (Highlander), and Makower Abbate Guerra Weger Vollmer PLLC (the Law Firm). The complaint centers on a non-judicial foreclosure sale

after plaintiffs failed to pay condominium association dues. The complaint asserts the following claims:

    Count I - violation of the Fair Debt Collection Practices Act (FDCPA)
    Count II - Slander of Title
    Count III - Conversion
    Count IV - Conversion

Before the Court is the Law Firm's motion for judgment **[*2]** on the pleadings on the grounds that based on the Supreme Court's recent decision Obduskey v. McCarthy & Holthus, 586 U.S. -, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019), plaintiffs do not have a viable claim under the FDCPA.[2] The other defendants have joined in the motion. For the reasons that follow, the motion will be granted. In light of dismissing the federal claim, the Court will decline to exercise supplemental jurisdiction over the state law claims. Further, given this determination, plaintiff's pending motion to compel (Doc. 32) and the Law Firm's motion to quash (Doc. 31) will be denied as moot.

II. Background

Plaintiffs Todd and Marcia Bates owned a condominium unit in the Green Farms Condominium community. Highlander was the property manager. Plaintiffs defaulted on dues they owed to the Association. The Association retained the Law Firm to initiate nonjudicial foreclosure proceedings. Ultimately, a third party purchased the condominium unit at the foreclosure sale.

Plaintiffs sued defendants in federal court, alleging that the actions taken in connection with the nonjudicial foreclosure were abusive debt collection practices, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. and state law.

III. Legal **[*3]** Standard

Under Fed. Civ. P. 12(c) a party may move for

---

[1] Although originally scheduled for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Previously, defendants moved for a stay pending the Supreme Court's decision in Obduskey. (Doc. 8). The Court denied a stay. (Doc. 16).

judgment on the pleadings under Rule 12(c) when the pleadings have closed, but the motion would not delay trial. Fed. R. Civ. P. 12(c).

A Rule 12(c) motion is reviewed by "using the same standard as applies to a review of a motion to dismiss under Rule 12(b)(6)." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007). Rule 12(b)(6) permits district courts to dismiss a complaint that fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must show that her complaint alleges facts which, if true, would entitle her to relief. First American Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). A complaint must contain allegations to support all of the "material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). The factual allegations of the complaint must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Further, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

IV. Discussion

A. FDCPA Claim

Plaintiffs allege that the Law Firm and Highlander violated the FDCPA. They have not asserted a FDCPA claim against Green Farm.

The FDCPA's stated purpose is to prohibit "debt collectors" from engaging in "abusive debt collection practices." 15 U.S.C. § 1692(e). Thus, in order to establish liability under the statute's substantive **[\*4]** provisions, the alleged conduct must have been taken by a "debt collector" "in connection with the collection of any debt." See, e.g., 15 U.S.C. § 1692c(a)-(b), 1692d, 1692e, 1692g. As the Sixth Circuit has observed, "[d]espite the Act's pivotal use of the concept, however, it does not define debt collection. While the concept may seem straightforward enough, confusion has arisen" regarding whether nonjudicial foreclosure is debt collection under the FDCPA. Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 460 (6th Cir. 2013), abrogated by Obduskey v. McCarthy & Holthus LLP, 586 U.S. -, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019). That confusion led to a circuit split, discussed in Glazer, which noted the majority view that "the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection." Id. at 460 (citations omitted). While Glazer noted this view's "pervasiveness in the

district courts," it concluded that

> mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a "debt collector" must comply with the FDCPA when engaged in mortgage foreclosure.... In this case, the district court held that RACJ [the defendant Law Firm] was not engaged in debt collection when it sought to foreclose on the Klie property. That decision was erroneous, and the judgment **[\*5]** must be reversed.

Id. at 460, 464.

Until the Supreme Court's decision in Obduskey, courts in this circuit, bound by Glazer, applied the FDCPA's debt-collector-related prohibitions to law firms engaged in nonjudicial foreclosure proceedings. In Obduskey, however, the Supreme Court unanimously held — like the majority view discussed in Glazer, 704 F.3d at 460 - that a law firm engaged in nonjudicial foreclosure proceedings is enforcing a security interest and not collecting a debt, and therefore cannot be subject to liability under the FDCPA. Obduskey, 586 U.S. --, 139 S. Ct. 1029, 1032. The Supreme Court reasoned that "[f]irst, and most decisive, is the text of the Act itself." Obduskey, 586 U.S. --, 139 S. Ct. 1029, 1032.

Specifically, the Supreme Court held that

> the limited-purpose definition poses a serious, indeed an insurmountable, obstacle to subjecting McCarthy [the defendant Law Firm] to the main coverage of the Act. It says that "[f]or the purpose of section 1692f(6) [a separate provision of the FDCPA which is not alleged to be at issue in this case]," a debt collector "also includes" a business, like McCarthy, "the principal purpose of which is the enforcement of security interests." § 1692a(6).

Id. (emphasis in original).

Here, plaintiffs allege that the Law Firm violated sections 1692(d) and **[\*6]** 1692e(2)(A) of the FDCPA when it "wrongfully recorded a lien against plaintiffs['] real estate and foreclosed on the real estate by advertisement." See Complaint at ¶¶ 11 - 12. Although section 1692(d) discusses Congress's authority to regulate debt collection because of its effect on interstate commerce, the Court assumes that plaintiffs meant to reference 15 U.S.C. § 1692d, which prohibits a debt collector from engaging in certain abusive debt collection practices. Likewise, 15 U.S.C. § 1692e(2)(A) prohibits a debt collector from making certain false,

deceptive or misleading representations in connection with its debt collection efforts. It cannot be disputed, however, that both of these provisions apply only to debt collectors engaged in debt collection, which under Obduskey, does not include Law Firms that are engaged in handling nonjudicial foreclosures.

Plaintiffs' complaint alleges that the Law Firm handles nonjudicial foreclosures for its clients, and that their FDCPA claims against the Law Firm arise from its handling of nonjudicial foreclosure proceedings relative to their condominium unit. See Complaint at ¶¶ 4 - 5, 11 - 13. In light of Obduskey, plaintiffs do not have a viable FDCPA claim against the Law Firm.

In response, plaintiffs appear [*7] to assert two arguments for why Obduskey does not apply. Plaintiffs first say that the Law Firm is estopped from making this argument because its letters to plaintiffs included the standard disclaimer language discussed in 15 U.S.C. § 1692e(11) which, plaintiffs contend, operates as an admission that the Law Firm's actions constituted debt collection activity. This argument does not carry the day. The Sixth Circuit has held that "the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 399 (6th Cir. 1998). In other words, a disclaimer identifying the communication as an "attempt to collect a debt" is "legally irrelevant" to the issue of whether a communication is subject to the FDCPA. Goodson v. Bank of America, N.A., 600 F. App'x 422, 432 (6th Cir. 2015), quoting Maynard v. Cannon, 401 F. App'x 389 (10th Cir. 2010). As such, the disclaimer on the Law Firm's letters is not dispositive as to whether the Law Firm was engaged in debt collection activity, which, under Obduskey, it was not.

Plaintiffs' next argument is that Obduskey is distinguishable for the reason that the instant complaint alleges that the Law Firm was engaged in more than security-interest enforcement. This argument also fails. Indeed, the plaintiff in Obduskey also alleged [*8] that the defendant Law Firm "engaged in more than security-interest enforcement by sending notices that any ordinary homeowner would understand as an attempt to collect a debt." Obduskey, 139 S.Ct. at 1039 (emphasis in original). The Supreme Court rejected this argument: "[B]ecause he who wills the ends must will the necessary means, we think the Act's (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so." Id. Thus, the Supreme Court held that certain actions allegedly taken by the defendant Law Firm that were distinct from its handling of nonjudicial foreclosure proceedings, but that were "the necessary means... to do so," did not remove it from the exclusion. Id. at 1039 - 1040. The same conclusion obtains here.

Overall, the complaint makes clear that the FDCPA claim against the Law Firm was based upon the Law Firm's initiation of nonjudicial foreclosure proceedings and ultimately a third party's purchase of plaintiffs' condominium unit at the foreclosure sale. See Complaint at ¶¶ 11 - 15. Under Obduskey, this activity does not give rise to a FDCPA claim.

To the extent plaintiffs refer to paragraph 12 of their complaint, which includes an allegation that the [*9] Law Firm "falsely represented the character, amount or legal status of plaintiff's condominium association dues, as delinquent, held the cashiers [sic] checks paid by your plaintiffs and overstated and falsely added charges in violation of 15 U.S.C. § 1692e(2)(A) and recorded a false lien and foreclosed on the real property." This allegation does not save plaintiffs' FDCPA claim. The allegation is conclusory and does not satisfy the pleading standard set forth in Rule 8. The complaint does not, for example, set forth the nature, amount or date of the "overstated and falsely added" charges, which information clearly was in plaintiffs' possession at the time they filed their complaint. Moreover, the actions taken by the Law Firm as alleged in paragraph 12 of the complaint, i.e., providing plaintiffs with notice of their default and recording the condominium association's lien, are a necessary predicate to initiating nonjudicial foreclosure proceedings under Michigan law. As in Obduskey, these allegations do not make out a claim against a Law Firm under the FDCPA for handling nonjudicial foreclosures for their clients. Accordingly, plaintiffs' FDCPA claims against the Law Firm must be dismissed.

As to Highlander, [*10] while it is not a Law Firm, the claim against them still fails. First, plaintiffs make the bare bones allegation that Highlander is a "debt collector" but fail to articulate any facts to support this allegation. Second, as made clear in plaintiffs' response to the Law Firm's motion, all of the correspondence relevant to plaintiffs' FDCPA claim is from the Law Firm, not Highlander. There are no specific factual allegations against Highlander to form a viable claim under the FDCPA.

B. Supplemental Jurisdiction/Pending Motions

In light of the dismissal of the federal claim, the Court

must consider its jurisdiction. Although the Court has supplemental jurisdiction over plaintiffs' state-law claims under 28 U.S.C. § 1367(a),[3] it may decline to exercise supplemental jurisdiction if the state-law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," or if "there are other compelling reasons for declining jurisdiction." Id. § 1367(c)(2), (c)(4).

Here, plaintiffs' state law claims would be more appropriately adjudicated by the state court. See § 1367(c) (1), (c)(4); Padilla v. City of Saginaw, 867 F. Supp. 1309, 1315 (E.D. Mich.1994). Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, Counts II - IV **[*11]** will be dismissed.

V. Conclusion

While it is unfortunate that plaintiffs lost their home for non-payment of association dues, their remedy, if any, does not lie in federal court under the FDCPA. Accordingly, defendants' motion is GRANTED. Count I is DISMISSED. Counts II - IV are DISMISSED WITHOUT PREJUDICE.

With respect to the pending discovery motions - plaintiffs' motion to compel and the Law Firm's motion to quash - these motions are MOOT in light of the dismissal of all of plaintiffs' claims.

This case is DISMISSED.

SO ORDERED.

/s/ Avern Cohn

AVERN COHN

UNITED STATES DISTRICT JUDGE

Dated: 8/29/2019

Detroit, Michigan

---

End of Document

---

[3] 28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a)

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD BATES a/ka TODD A. BATES and
MARCIA BATES a/k/a MARCIA C. BATES

        Plaintiffs

      vs                                  No.  2018-             -CH

GREEN FARMS CONDOMINIUM       Honorable
ASSOCIATION, a Michigan nonprofit
corporation, THE HIGHLANDER GROUP,
MMC, INC., and MAKOWER ABBATE
GUERRA WEGNER VOLLMER, PLLC,

        Defendants.

---

PAUL G. VALENTINO (P34239)
Attorney for Plaintiffs
PAUL G. VALENTINO, J.D., P.C.
43494 Woodward Avenue
Suite 203
Bloomfield Hills, Michigan 48302
(248) 334-7787
Fax: (248) 334-7202
paul@lehman-valentino.com

---

## **COMPLAINT AND JURY DEMAND**

      Now come the plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a MARCIA C. BATES, by and through their counsel, PAUL G. VALENTINO, J.D., P.C., and for their complaint against defendants, GREEN FARMS CONDOMINIUM ASSOCIATION, THE HIGHLANDER GROUP, MMC, INC. and MAKOWER ABBATE GUERRA WEGNER VOLLMER, PLLC for Cloud on Slander of title to property commonly known as 7402 Azalea Court, West Bloomfield, Michigan, 48322, Unit 25, Greens Farm Condominium, states as follows:

PAUL G. VALENTINO
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

## COMMON ALLEGATIONS

1.      Your plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a MARCIA C. BATES ("Bates") are and were at all times pertinent hereto Michigan residents residing in West Bloomfield, Oakland County, State of Michigan.

2.      That defendant, GREEN FARMS CONDOMINIUM ASSOCIATION, ("Green Farms"), is and was at all times pertinent hereto a domestic nonprofit corporation duly organized under the laws of the State of Michigan whose resident agent is The Highlander Group, MMC, Inc., at 3080 Orchard Lake Road, Suite J, Keego Harbor, Michigan, 48320 and whose principal place of business is located in the City of West Bloomfield, County of Oakland, State of Michigan.

3.      That defendant, THE HIGHLANDER GROUP, MMC, INC.  ("Highlander"), is a Michigan Corporation duly incorporated under the laws of the State of Michigan whose registered agent is Kathleen A.  LaBrosse and whose registered office is located at 3080 Orchard Lake Road, Suite J, Keego Harbor, Michigan, 48320 and was at all times relevant hereto hired by defendant, Green Farms, to manage the condominium project.

4.      That defendant, MAKOWER ABBATE GUERRA WEGNER VOLLMER, PLLC ("Makower"),  is and was at all times pertinent hereto a professional corporation duly incorporated in the State of Michigan whose resident agent is Stephen Guerra and whose registered office is located at 30140 Orchard Lake Road, Farmington Hills, Michigan, 48334.

5.      That plaintiffs' complaint involves the slander to the title to real property commonly known as 7402 Azalea Court, West Bloomfield, Michigan, 48322, Unit 25, Greens Farm Condominium, the "real estate," by virtue of the filing of a lien claiming unpaid association dues when the defendants were in receipt of the dues and then, in violation of the association by laws,

2

PAUL G. VALENTINO
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

proceeded to foreclose on the lien by advertisement.

6.      That the property was purchased at the foreclosure sale by Trademark Properties of Michigan, LLC for $37,859.29.

## BASIS OF JURISDICTION

7.      That the United state District Court has jurisdiction in accordance with 28 USC §1331, 15 USC §1692k(d) and supplemental jurisdiction of the related state law claims in accordance with 28 USC §1367.

## COUNT I - VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT 15 USC §1692 ET SEQ.  (FDCPA)

8.      That plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a MARCIA C. BATES, incorporate the allegations contained in paragraphs 1 through 7 of plaintiffs' complaint as though fully set forth herein, paragraph by paragraph and word for word.

9.      That at all times relevant hereto defendants Makower and Highland were acting as debt collectors within the meaning of 15 USC §1692(a)(6).

10.     That your plaintiffs are and were at all times relevant hereto protected consumers within the meaning of the FDCPA15 USC §1692.

11.     That the defendants Makower and Highlander did engage in conduct in violation of the FDCPA when they engaged in conduct the natural consequence of which was and is to harass, oppress, or abuse your plaintiffs in violation of 15 USC 1692(d) when they wrongfully recorded a lien against plaintiffs real estate and foreclosed on the real estate by advertisement in violation of the condominium by laws.

12.     That the defendants Makower and Highlander did engage in conduct in violation

PAUL G. VALENTINO
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

3

of the FDCPA when they falsely represented the character, amount or legal status of plaintiff's condominium association dues, as delinquent, held the cashiers checks paid by your plaintiffs and overstated and falsely added charges in violation of 15 USC §1692e(2)(A) and recorded a false lien and foreclosed on the real property in violation of the condominium by laws.

13.     That the defendants, Makower and Highlander have caused your plaintiffs to lose the real property by virtue of the foreclosure sale by advertisement which occurred on or about August 28, 2018 when the real estate was sold to Trademark Properties of Michigan, LLC for $37,859.29.

14.     That the real property has a value in excess of $150,000.00 and is your plaintiffs residence.

15.     That your plaintiffs are entilted to recover all their damages suffered by virtue of defendants Makower and Highlander's violations of the FDCPA including actual damages, additional damages as permitted by the court, all litigation costs including reasonable attorney fees provided by 15 USC §1692k.

WHEREFORE your plaintiffs are entitled to judgment in an amount as determined by a jury including actual damages, additional damages, court costs, and reasonable attorney fees as is deemed just and equitable under the facts and circumstances.

## COUNT II - SLANDER OF TITLE

16.     That plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a MARCIA C. BATES, incorporate the allegations contained in paragraphs 1 through 15 of plaintiffs' complaint as though fully set forth herein, paragraph by paragraph and word for word.

17.     That the defendants received plaintiffs monthly association dues for the months of December, 2017 through August, 2018 which were hand delivered to defendant Highlander Group

PAUL G. VALENTINO
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

by plaintiffs who delivered cashier's checks for each installment.

18.    That the defendants cashed the checks, retained plaintiffs' monthly payments and liened the real estate on June 15, 2018 claiming unpaid assessments and other sums in the amount of $2,814.50.

19.    That the defendants then foreclosed by advertisement in violation of the bylaws, on plaintiffs' property claiming that the monthly dues were not paid and sold plaintiffs' real property to the highest bidder.

20.    That defendants' conduct was knowing and willful, in violation of MCL 565.108 and done with malice.

21.    That defendants by their actions wrongfully liened and foreclosed on plaintiffs' property, slandering their title and converting their property.

22.    That as a direct result of the willful and malicious conduct of the defendants, plaintiffs' real property was sold at public auction for $37,859.29.

23.    That by virtue of the foregoing the defendants are libel unto plaintiffs for all the damages sustained thereby including but not limited to the value of their real property, the litigation expenses and attorney fees in brining this action.

24     That the claim of lien filed by defendants constitutes a cloud upon plaintiffs' title to the real estate which interfered with plaintiffs fee simple interest in the real property.

WHEREFORE counter plaintiffs pray this honorable court entered judgment in their favor in an amount as determined by a jury including actual costs as is deemed just an equitable under the facts and circumstances.

## **COUNT III - CONVERSION**

25.    That plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a

**PAUL G. VALENTINO**
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

MARCIA C. BATES, incorporate the allegations contained in paragraphs 1 through 24 of plaintiffs' complaint as though fully set forth herein, paragraph by paragraph and word for word.

26.     That the defendants conduct in taking and selling the real property at public auction constitutes statutory conversion in violation of MCL 600.2919(a)

27.     That by virtue of defendants statutory conversion of the real property as more particularly described in Count II, plaintiffs are entitled to a judgment against defendants in an amount three times the value of the real property converted together with court costs and reasonable attorney fees.

WHEREFORE, you plaintiffs are entitled to judgment in an amount as determined by a jury including treble damages, actual costs and reasonable attorney fees as is deemed just and equitable under the facts and circumstances.

## COUNT IV - CONVERSION

28.     That plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a MARCIA C. BATES, incorporate the allegations contained in paragraphs 1 through 27 of plaintiffs' complaint as though fully set forth herein, paragraph by paragraph and word for word.

29.     That the defendants by accepting plaintiffs checks in the amount of $3,276.24 and not applying the funds to plaintiffs dues obligation, wrongfully exercised dominion and control over those funds.

30.     That upon the asserting of such dominion and control over the cashiers checks by the defendants, the act of conversion was complete and plaintiffs are entitled to three times the value of the converted checks together with costs and reasonable attorney fees.

WHEREFORE, your plaintiffs are entitled to judgment in an amount as determined by a jury including treble damages, actual costs and reasonable attorney fees as is deemed just and

**PAUL G. VALENTINO**
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

equitable under the facts and circumstances.

Respectfully Submitted,

PAUL G.  VALENTINO, J.D., P.C.

/s/Paul G.  Valentino
Paul G.  Valentino (P34239)
Attorney for plaintiffs
43494 Woodward Avenue
Suite 203
Bloomfield Hills, Michigan 48302
(248) 334-7787

Dated:   November 13, 2018

**PAUL G. VALENTINO**
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD BATES a/ka TODD A. BATES and
MARCIA BATES a/k/a MARCIA C. BATES

        Plaintiffs

      vs                          No.  2018-              -CH

GREEN FARMS CONDOMINIUM      Honorable
ASSOCIATION, a Michigan nonprofit
corporation, THE HIGHLANDER GROUP,
MMC, INC., and MAKOWER ABBATE
GUERRA WEGNER VOLLMER, PLLC,

        Defendants.

---

PAUL G. VALENTINO (P34239)
Attorney for Plaintiffs
PAUL G. VALENTINO, J.D., P.C.
43494 Woodward Avenue
Suite 203
Bloomfield Hills, Michigan 48302
(248) 334-7787
Fax: (248) 334-7202
paul@lehman-valentino.com

---

PAUL G. VALENTINO
Attorney At Law
43494 Woodward Avenue, Suite 203
Bloomfield Hills, Michigan 48302
Telephone (248) 334-7787
FAX (248) 334-7202

## **JURY DEMAND**

      Now come plaintiffs, TODD BATES a/ka TODD A. BATES and MARCIA BATES a/k/a

MARCIA C. BATES, by and through their counsel, PAUL G. VALENTINO, J.D., P.C., and

hereby demand a trial by jury of all issues triable by a jury as a matter of right.

                      Respectfully submitted,

                      PAUL G. VALENTINO, J.D., P.C.

                      /s/Paul G.  Valentino
                      Paul G. Valentino (P34239)
                      Attorney for plaintiffs
                      43494 Woodward Avenue, Suite 203
                      Bloomfield Hills, Michigan 48302
                      (248) 334-7787

Dated:   November 13, 2018