UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE GARLAND,
Individually and on behalf
of all others similarly situated,

                    Plaintiffs,

                                                    CASE NO. 18-11561
v.                                                  HON. DENISE PAGE HOOD

ORLANS PC, LINDA ORLANS,
and ALISON ORLANS,

                    Defendants.
_____/

**<u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#7],
DENYING PLAINTIFF'S MOTIONS TO STRIKE [#11, #30],
DENYING AS MOOT PLAINTIFF'S MOTION TO
CERTIFY CLASS [#31], AWARDING COSTS TO
PLAINTIFF, AND DISMISSING
PLAINTIFF'S CAUSE OF ACTION</u>**

## I.    INTRODUCTION

On May 17, 2018, Plaintiff filed this proposed class action lawsuit, alleging that

Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

("FDCPA"), and the Regulation of Collection Practices Act, M.C.L. § 445.251 *et seq*.

("RCPA"), when Defendant Orlans PC mailed one or more similar letters to Plaintiff

and others.  On July 18, 2018, Defendants filed a Motion to Dismiss pursuant to Rules

12(b)(1) and 12(b)(6). ECF No. 7.  Plaintiff then filed a Motion to Strike the Motion

to Dismiss.  ECF No. 11. The Motion to Dismiss and the Motion to Strike the Motion to Dismiss were fully briefed.[1]

On November 21, 2018, the Court entered an order holding the case in abeyance pending the U.S. Supreme Court's decision in *Obduskey v. McCarthy & Holthus LLP*, No. 17-1307, 138 S.Ct. 2710 (June 28, 2018).  On March 20, 2019, the U.S. Supreme Court rendered its decision in *Obduskey*. *See Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019) (hereinafter, "*Obduskey*").   The Court then ordered supplemental briefing regarding the Motion to Dismiss – expressly limited to the effect of the *Obduskey* ruling on the case, and the parties filed supplemental briefs. In addition, Plaintiff filed a Motion to Strike Defendants' Supplemental Brief, ECF No. 30, and the Motion to Strike Defendants' Supplemental Brief has been fully briefed.

The parties have since submitted numerous other filings:

A.   Plaintiff's Citation of Supplemental Authority in Opposition to Defendants' Motion to Dismiss [ECF No. 39];

B.   Plaintiff's Second Citation of Supplemental Authority in Opposition to Defendants' Motion to Dismiss [ECF No. 40];

---

[1]Plaintiff also filed a Motion to Certify Class [ECF No. 31].  As the Court grants Defendants' Motion to Dismiss, the Motion to Certify Class is denied as moot.

     C.     Defendants' Further Citation of New, Supplemental, Authority in Support of Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) [ECF No. 41];

     D.     Defendants' Citation of Additional New Supplemental Authority in Support of Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) [ECF No. 43]

     E.     Plaintiff's Third Citation of Supplemental Authority in Opposition to Defendants' Motion to Dismiss [ECF No. 44];

     F.     Defendants' Citation of New Sixth Circuit Authority in Support of Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) [ECF No. 45]; and

     G.     Plaintiff's Second Supplemental Brief in Opposition to Defendants' Motion to Dismiss. [ECF No. 49]

The Court has reviewed and considered each of those filings, though some argument(s) and cases set forth in those documents are not expressly addressed in this Order.  For the reasons stated below, the Court grants Defendants' Motion to Dismiss with respect to the FDCPA claim, dismisses Plaintiff's FDCPA claim with prejudice, and dismisses Plaintiff's RCPA claim without prejudice.

## II.   BACKGROUND

Plaintiff alleges two fair debt statutory claims, one under the FDCPA and one under the RCPA.  Each claim is based on form letters sent to Plaintiff and other

putative class members on Orlans PC letterhead.  Plaintiff's letter from Orlans PC was dated May 18, 2017, and the first page of it is attached as Exhibit A to the complaint. Plaintiff's principal claim is that Defendants send out foreclosure notices appearing to be from attorneys (or susceptible to that interpretation) that are instead processed by non-attorney staff and mailed without meaningful attorney review.  Plaintiff and the class seek only statutory damages. ECF No. 1 at ¶¶ 21, 24.

Defendants are Michigan's second-largest foreclosure law firm (Orlans PC) and its two principal owners and executives (Linda Orlans and Alison Orlans). ECF No. 1 at ¶¶ 13-14, 17-21, 23-27, 83-89.  The complaint alleges an RCPA subclass of homeowners who were sent foreclosure letters by Defendants since April 17, 2011:

> All persons to whom Orlans PC caused to be sent any version of the Orlans PC Foreclosure Letter in connection with mortgages conveyed for residential real property located in Michigan, dated on or after April 17, 2011, which was not returned as undelivered by the U.S. Post Office, through the date that the Court issues an order certifying any class requiring notice in this matter, and through the date of entry of final judgment as to any class for which notice is not required under Federal Rule of Civil Procedure 23.

ECF No. 1 at ¶ 94 (emphasis added).

The complaint uses the descriptive term "Orlans PC Foreclosure Letter" to categorize Plaintiff's foreclosure letter from Orlans PC along with those sent to tens of thousands of other homeowners. As listed in the complaint, these letters:

4

a.      [Were] on firm letterhead;

b.      Displayed Linda Orlans' and Alison Orlans' surname;

c.      Identified Orlans PC's client as the creditor or servicing agent;

d.      Indicated that Orlans PC was a law firm retained to foreclose the debtor's mortgage;

e.      Did not disclaim that [they were] from an attorney;

f.      [Were] (with rare exception) unsigned by an individual Orlans PC lawyer; and

g.      Contained the typographic text "Orlans Associates, P.C." or "Orlans Associates PC" or "Orlans PC" at the end of the letter in the signature block.

ECF No. 1 at ¶ 41. *See also Id*. at ¶ 51 (emphasis added) ("The Garland Foreclosure Letter is a form letter, in that it was generated based on a standard form letter used by Orlans PC to initiate correspondence with homeowners whose mortgages Orlans PC had been retained to foreclose. This form letter (as distinct from Exhibits A and B, which comprise an instance of it) is referred to herein as the "Orlans PC Foreclosure Letter"."); ¶ 52 (describing the Garland Foreclosure Letter as an "example"); ¶ 54(e) (Orlans PC Foreclosure Letters "[h]a[ve] contained other boilerplate text specified by the client").

The complaint alleges that "[i]n Michigan, the vast majority of Orlans PC's foreclosures have been pursuant to Michigan's foreclosure by advertisement statute, M.C.L. § 600.3201, et seq." ECF No. 1 at ¶ 40. Defendants in the Motion do not challenge this allegation or offer any contrary evidence. The complaint further alleges

that "in each foreclosure by advertisement proceeding in Michigan handled by Orlans PC since at least 2011, Orlans PC has sent a letter to the debtor/mortgagor in substantial conformity with Exhibits A and B" to the complaint." ECF No. 1 at ¶ 41.

## III.   ANALYSIS

### A.   Motion to Dismiss

#### 1.   *FDCPA Claim*

As recognized in *Obduskey*:

The FDCPA's definitional section, 15 U.S.C. § 1692a, defines a "debt" as:

> *"any obligation* or alleged obligation of a consumer *to pay money* arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." § 1692a(5) (emphasis added).

The Act then sets out the definition of the term "debt collector." § 1692a(6). The first sentence of the relevant paragraph, which we shall call the primary definition, says that the term "debt collector":

> "means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another." *Ibid.*

The third sentence, however, provides what we shall call the limited-purpose definition:

6

> "For the purpose of section 1692f(6) [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." *Ibid*.

The subsection to which the limited-purpose definition refers, § 1692f(6), prohibits a "debt collector" from:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property . . . ;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

*Obduskey*, 139 S. Ct. at 1035-36.

In *Obduskey*, the Supreme Court granted a petition for certiorari "[i]n light of different views among the Circuits about the application of the FDCPA to nonjudicial foreclosure proceedings." *Obduskey*, 139 S.Ct. 1035 (citing, among other cases, *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)). The Supreme Court concluded that the defendant (McCarthy & Holthus LLP), a law firm that engaged in security interest enforcements (specifically, through nonjudicial foreclosure proceedings) is not a "debt collector" under the main provision of the FDCPA (§ 1692a(6)), as the defendant was subject only to the prohibitions contained

7

in § 1692f(6). *Obduskey*, 139 S.Ct. at 1035.

In holding that the McCarthy law firm was not a "debt collector" under Section 1692a(6), the Supreme Court identified three reasons:

1.      The text of the FDCPA, in particular, the language in Section 1692f(6).

The court stated:

> *First*, and most decisive, is the text of the Act itself. As a preliminary matter, we concede that if the FDCPA contained *only* the primary definition, a business engaged in nonjudicial foreclosure proceedings would qualify as a debt collector for all purposes.
>
> * * * * *
>
> The Act does not, however, contain only the primary definition. And the limited-purpose definition poses a serious, indeed an insurmountable, obstacle to subjecting McCarthy to the main coverage of the Act. It says that "[f]or the purpose of section 1692f(6)" a debt collector "also includes" a business, like McCarthy, "the principal purpose of which is the enforcement of security interests." § 1692a(6) (emphasis added). This phrase, particularly the word "also," strongly suggests that one who does no more than enforce security interests does not  fall within the scope of the general definition. Otherwise why add this sentence at all?
>
> It is logically, but not practically, possible that Congress simply wanted to emphasize that the definition of "debt collector" includes those engaged in the enforcement of security interests. But why then would Congress have used the word "also"? And if security-interest enforcers are covered by the primary definition, why would Congress have needed to say anything special about § 1692f(6)? 1036-37

*Obduskey*, 139 S.Ct. at 1036-37.

8

2.     Congress may have desired to treat security-interest enforcement differently in order to avoid conflicts with nonjudicial foreclosure schemes, such as Colorado's.  The Court reasoned:

> Second, we think Congress may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosure schemes. . . . But it is also possible, in light of the language it employed, that Congress wanted to avoid the risk of such conflicts altogether.

*Obduskey*, 139 S.Ct. at 1037.

3. The history of the FDCPA:

> Third, for those of us who use legislative history to help interpret statutes, the history of the FDCPA supports our reading. When drafting the bill, Congress considered a version that would have subjected security-interest enforcers to the full coverage of the Act. That version defined a debt collector as "any person who engages in any business the principal purpose of which is the collection of any debt or enforcement of security interests." S. 918, 95th Cong., 1st Sess., § 803(f) (1977) (emphasis added). A different version of the bill, however, would have totally excluded from the Act's coverage "any person who enforces or attempts to enforce a security interest in real or personal property." S. 1130, 95th Cong., 1st Sess., § 802(8)(E) (1977). Given these conflicting proposals, the Act's present language has all the earmarks of a compromise: The prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other "debt collector" provisions of the Act will not.

*Obduskey*, 139 S.Ct. at 1037-38.

The *Obduskey* court concluded:

> In our view, the last sentence does (with its § 1692f(6) exception) place

9

> those whose "principal purpose ... is the enforcement of security interests" outside the scope of the primary "debt collector" definition, § 1692a(6), where the business is engaged in no more than the kind of security-interest enforcement at issue here—nonjudicial foreclosure proceedings.

*Obduskey*, 139 S.Ct. at 1033. *See also Obduskey*, 139 S.Ct. at 1038 ("but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act.")

In light of *Obduskey*, Defendants argue that the FDCPA does not regulate a person such as Orlans PC, which is "engaged in nonjudicial foreclosures, except to the limited extent provided in § 1692f(6) (which [are] not applicable here)." ECF No. 37, PgID 2125.

Plaintiff contends that the instant case is different from *Obduskey* because the foreclosure letter sent by Defendants did not implement any of the requirements of Michigan's nonjudicial foreclosure statute, whereas the defendant in *Obduskey* allegedly only sent letters required by Colorado's nonjudicial foreclosure statute. Plaintiff believes *Obduskey* inapplicable to this case and urges the Court to continue to apply *Glazer*. Under Plaintiff's theory, Defendants would be debt collectors pursuant to § 1692a(6) because the letter was sent "in connection with" the collection of a debt. ECF No. 35, PgID 2063. The Court does not find that argument persuasive.

On its face, *Obduskey* abrogated *Glazer* with respect to the issue of whether the

FDCPA applies to nonjudicial foreclosure proceedings. *See Obduskey*, 139 S.Ct. at 1035-38 (majority opinion); 139 S.Ct. at 1040-41 (Sotomayor, J. concurring).  In *Obduskey*, the plaintiff argued that the defendant "engaged in *more* than security-interest enforcement by sending notices that an ordinary homeowner would understand as an attempt to collect a debt backed up by the threat of foreclosure." *Id.* at 1039 (emphasis in original).  The Supreme Court noted this but stated that, "Indeed, every nonjudicial foreclosure scheme of which we are aware involves notices to the homeowner," and the court thought that the FDCPA's "(partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so." *Obduskey*, 139 S.Ct. at 1039.

In this case, the *Obduskey* court's language is significant because Plaintiff's Complaint alleges that:

a.   "Orlans PC is in the business of foreclosing on homes, and a large portion of its business derives from its foreclosure practice;" [¶25]

b.   "On information and belief, the vast majority of non-commercial residential property foreclosures conducted by Orlans PC in Michigan and other states have been pursuant to non-judicial foreclosure statutes." [¶39]

c.   "In Michigan, the vast majority of Orlans PC's foreclosures have been pursuant to Michigan's foreclosure by advertisement statute;" [¶40]

d.   On or about May 18, 2017, Defendants sent Plaintiff a letter stating that they had been retained by Wells Fargo to foreclose on Plaintiff's home. [¶¶41-55]

11

ECF No. 1.

Although Plaintiff argues that Orlans PC is a debt collector subject to §
1692a(6), Plaintiff does not dispute that the letter and his FDCPA claim are based
upon a nonjudicial mortgage foreclosure or that Orlans PC's primary business is
nonjudicial foreclosures.  Even in its motion in opposition to the Motion to Dismiss,
Plaintiff argued that his "principal claim is that defendants sent out foreclosure notices
appearing to be from attorneys (or susceptible of that interpretation) that are instead
processed by non-attorney staff and mailed without meaningful attorney review. . . .
Defendants are Michigan's second-largest foreclosure law firm and its two principal
owners and executives."ECF No. 15, PgID 988 (citing ECF No. 1 at ¶¶ 13-14, 17-21,
23-27, 83-89).

Plaintiff contends that the *Obduskey* court limited its holding to those
"foreclosure law firm[s] whose communications relate solely to implementing a
nonjudicial foreclosure under state law." ECF No. 35, PgID 2067 (citing *Obduskey*,
139 S.Ct. at 1037 (emphasis in Plaintiff's brief) ("the debt-collector-related
prohibitions of the FDCPA . . . do not apply to those who, like McCarthy, *are
engaged in no more than security interest enforcement*.") and 1038 ("These
considerations convince us that, but for § 1692f(6), *those who engage in only
nonjudicial foreclosure proceedings* are not debt collectors within the meaning of the"

FDCPA.).

Plaintiff claims that, as *Obduskey* does not apply, Defendants are "debt collectors" under a 1999 Sixth Circuit case because Orlans PC "collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of [its] general practice." *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999). Plaintiff relies on *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (following *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010), in arguing that the communication by Orlans PC only needed to be "in connection with" the collection of a debt to come within § 1692e, as Orlans PC "regularly collects debts."). ECF No. 35, PgID 2075. The Court finds that Plaintiff's arguments appear to be inconsistent with his allegations set forth in the Amended Complaint that Orlans PC's business focuses on nonjudicial foreclosures.

Plaintiff next argues that, although the *Obduskey* court recognized that the law firm in that case was pursuing nonjudicial foreclosures and, as such, did not come within the definition of "debt collector" pursuant to §1692a(6), the *Obduskey* court continued,

> This is not to suggest that pursuing nonjudicial foreclosure is a license to engage in abusive debt collection practices like repetitive nighttime phone calls; enforcing a security interest does not grant an actor blanket immunity from the Act. **But given that we here confront only steps <u>required</u> by state law**, we need not consider what other conduct (related to, but not required for, enforcement of a security interest) might

transform a security-interest enforcer into a debt collector subject to the main coverage of the Act.

*Obduskey*, 139 S.Ct. at 1039-40 (emphasis added).

Plaintiff argues that, unlike the letter sent in *Obduskey*, the letter sent by Orlans PC is not <u>required</u> under the Michigan nonjudicial foreclosure statutes. Plaintiff contends that, because the letter sent by Orlans PC was not mandated by Michigan statute, false, deceptive, and/or misleading representations in the letter would not "avoid conflicts with state nonjudicial foreclosure schemes." ECF No. 35, PgID 2073. Since the hearing, Plaintiff has supplied the Court with cites to three cases that have held *Obduskey* governs only those situations where the challenged actions by the law firm were required under the applicable state law. *See Sevela v. Kozeny & McCubbin, L.C.*, 2019 U.S. Dist. LEXIS 80890, at **9-10 (D. Neb. May 2, 2019); *Cooke v. Carrington Mortg. Servs.*, 2019 U.S. Dist. LEXIS 120248, at **6-7 (D. Md. July 18, 2019); *Gagnon v. Hal P. Gazaway & Assocs., L.L.C.*, 2019 U.S. Dist. LEXIS 159684, at **5-6 (D. Alaska Sept. 19, 2019). Plaintiff asserts that the purpose of the Orlans PC Foreclosure Letter was not to implement foreclosure, so it does not satisfy any of the three rationales given by the *Obduskey* court. Plaintiff argues that is especially true because Orlans PC was not attempting to enforce a security interest when sending the letter to mitigate losses of their client.

Plaintiff's arguments are inconsistent with the language of § 1692a(6), which

states: "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in *any business the principal purpose of which is the enforcement of security interests*." (emphasis added). This language indicates that enforcement of security interests need not be the <u>only</u> business of a party that is involved in the nonjudicial foreclosures, but instead simply <u>a</u> business of the party (as is the case with Orlans PC).

When discussing § 1692f(6), the *Obduskey* court seemed to align with that conclusion when it stated: "we believe that the statute exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions." *Id.* at 1040. *See also Bates v. Green Farms Condo. Assoc.*, 2019 WL 4073395, at *3 (E.D. Mich. Aug. 29, 2019) (*affirmed Bates v. Green Farms Condo. Assoc.,* — F.3d — , 2020 WL 2111314 (6th Cir. May 4, 2020) ("Overall, the complaint makes clear that the FDCPA claim against the Law Firm was based upon the Law Firm's initiation of nonjudicial foreclosure proceedings and ultimately a third party's purchase of plaintiffs' condominium unit at the foreclosure sale. See Complaint at ¶¶ 11–15. Under *Obduskey*, this activity does not give rise to a FDCPA claim."). As the majority and Justice Sotomayor noted, Congress can amend the FDCPA if persons pursuing nonjudicial foreclosure proceedings should be included in the definition of "debt collector" at § 1692a(6). *Obduskey*, 139 S.Ct. at 1038, 1040

(majority opinion) and 1041 (Sotomayor, J., concurring).

For the reasons set forth above, the Court grants Defendants' Motion to Dismiss with respect to the FDCPA claim, with prejudice.

 2.  *RCPA Claim*

As the Court has concluded that there is no viable FDCPA claim before the Court, the Court no longer has federal subject matter jurisdiction over this matter. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's RCPA claim, the Court finds: (a) that the RCPA claim is rooted in Michigan law; and (b) more importantly, the issue of whether the RCPA applies to a non-judicial foreclosure has not been litigated in or decided by Michigan courts. For that reason, in the absence of federal subject matter jurisdiction, the Court: (1) concludes that a determination of the RCPA's applicability to nonjudicial foreclosures would best be litigated in Michigan state courts; and (2) dismisses Plaintiff's RCPA's claim without prejudice.

**B.   Motion to Strike the Motion to Dismiss**

The Motion to Dismiss filed by Defendants contains language regarding Plaintiff's criminal history, and some that criminal history is detailed. Before filing his response brief, Plaintiff filed a Motion to Strike the Motion to Dismiss, asking the

Court to: (1) strike the Motion to Dismiss in its entirety; and (2) require Defendants to file, within five days of entry of the order, a corrected or amended motion and supporting brief that omits the first sentence of the "Introduction" section, the first paragraph of the "Facts" section, and footnote 1. Plaintiff argues that the language he seeks to omit is not relevant to this cause of action and constitutes nothing more than a gratuitous attack against him.

Defendants assert that the Court is entitled to know Plaintiff's background, including his felony conviction and incarceration. Defendants further state that Plaintiff raised – and the Court noted – Plaintiff's incarceration in a previous action Plaintiff filed against Defendant. Defendants suggest that the felony conviction is relevant to the issues before the Court, including Plaintiff's credibility, and would be admissible pursuant to Federal Rule of Evidence 609. Defendants believe that Plaintiff's felony conviction for possession with intent to distribute cocaine is relevant because he makes "conclusory and speculative allegations of subject matter jurisdiction" that should not be presumed to be truthful.

The Court finds that Plaintiff justifiably brought the Motion to Strike the Motion to Dismiss. The statements of Defendants regarding Plaintiff's criminal history have <u>no</u> bearing on the issue raised in the Motion to Dismiss or this action, which is solely about whether Defendants (specifically, Orlans PC) engaged in

17

wrongful conduct when sending the letter at issue to Plaintiff.  Nothing about that letter pertains to Plaintiff's conduct or credibility.  As the statements included in the Motion to Dismiss have no bearing on the issues raised in the Motion to Dismiss (or Plaintiff's claims), it is hard to fathom why such statements were included other than to seek to prejudice the Court by identifying the "badness" or "bad acts" of Plaintiff. For that reason, the Court finds that Defendants' inclusion of such statements in its Motion to Dismiss, at a minimum, contravenes the Eastern District of Michigan Civility Principles (*see, e.g.*, Lawyer's Commitment of Professional Civility ("A lawyer shall abstain from disrespectful, disruptive and/or abusive behavior, and will at all times act with dignity, decency and courtesy")), as well as civility and decency as a whole.

The Court is not persuaded that it should grant the relief sought by Plaintiff, however, for several reasons.  First, Plaintiff (and the Court) previously noted in public documents that Plaintiff was incarcerated immediately prior to filing the first cause of action, only months before filing this cause of action.  Second, the statements regarding Plaintiff's criminal history are, in fact, accurate.  Third, the Court is not – and will not be – prejudiced against Plaintiff due to uncivil and unnecessary statements made by another party in documents filed on the docket or made on the record.

Accordingly, the Court denies Plaintiff's Motion to Strike the Motion to Dismiss. The Court: (a) orders Defendants – and Defendants' counsel – to cease filing irrelevant and/or unnecessary statements regarding the character or history of Plaintiff; and (b) advises Defendants and their counsel that any further irrelevant and/or unnecessary statements may subject the author or speaker to being held in contempt of court.

**C.     Motion to Strike Portions of Supplemental Brief**

On April 9, 2019, the Court entered a Stipulated Order Lifting Stay and Establishing Supplemental Briefing Schedule, which stated, in part:

> 2.     Defendants shall file on April 24, 2019, a Supplemental Brief in Support of their pending Motion to Dismiss to address the impact on the motion of the *Obduskey* decision, which Supplement shall be no more than 15 pages.
>
> 3.     Plaintiff shall file on May 15, 2019, his Supplemental Response in Opposition to defendants' Motion to Dismiss to address the impact on the motion of the *Obduskey* decision, which Supplement shall be no more than 18 pages.
>
> 4.     Defendants shall file on May 29, 2019, their Supplemental Reply Brief in support of their Motion to Dismiss to address the impact on the motion of the *Obduskey* decision, which Reply shall be no more than 5 pages.

ECF No. 28, PgID 1872.

In its Motion to Strike Portions of Supplemental Brief, Plaintiff argues that "Defendants filed a supplemental brief containing extensive argument and an exhibit

that have nothing to do with the impact of the *Obduskey* decision on the pending motion to dismiss." ECF No. 30, 1930. Defendants respond that they needed to address the subject matter jurisdiction of this cause of action if the FDCPA claim was dismissed.

The Court finds that Defendants' arguments exceeded the parameters of the April 9, 2019 Stipulated Order. *Obduskey* did not address subject matter jurisdiction, nor did it address supplemental jurisdiction. The parties had the opportunity to fully address those issues when the Motion to Dismiss originally was briefed in 2018 – and each party exercised that opportunity. The Court concludes, however, that there is no need to strike Defendants' Supplemental Brief and require them to refile the appropriate portions. The Court has the capacity, and has exercised that capacity, to consider only the arguments in Defendants' Supplemental Brief (and Reply) that stem from the *Obduskey* decision. The Court concludes that Plaintiff is entitled to an award of fees for the preparation and filing of the Motion to Strike Portions of Defendants' Supplemental Brief. Defendants did not object to the Plaintiff's request for an award of $1,000.00, an amount the Court finds reasonable and warranted. Accordingly, the Court orders that Defendants pay Plaintiff $1,000.00 for having to file the Motion to Strike Portions of Defendants' Supplemental Brief.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, the Court:

1.   GRANTS Defendants' Motion to Dismiss [ECF No. 7];

2.   DENIES Plaintiff's Motion to Strike the Motion to Dismiss [ECF No. 11];

3.   DENIES Plaintiff's Motion to Strike Portions of Defendants' Supplemental Brief [ECF No. 30];

4.   DENIES AS MOOT Plaintiff's Motion to Certify Class [ECF No. 31];

5.   DISMISSES Plaintiff's FDCPA claim with prejudice and Plaintiff's RCPA claim without prejudice;

6.   WARNS Defendants about filing bad faith arguments or failing to comply with Court Orders; and

7.   AWARDS Plaintiff $1,000.00 for having to file the Motion to Strike Portions of Defendants' Supplemental Brief.

IT IS SO ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 19, 2020          UNITED STATES DISTRICT JUDGE